700 So.2d 478 (1997)
Robert F. MEREDITH, III, John W. Crancer, Harry F. Hufft, L.D. Uhler, C. Paul Hilliard, Joe Elsbury, Jr., and The Louisiana Independent Oil And Gas Association, Inc.
v.
The Honorable Richard P. IEYOUB, in his Capacity as Attorney General for the State of Louisiana.
No. 96-C-1110.
Supreme Court of Louisiana.
September 9, 1997.
Rehearing Denied October 10, 1997.
*479 Richard P. Ieyoub, Atty. Gen., E. Kay Kirkpatrick, Roy A. Mongrue, Jr., James M. Ross, Charles W. Roberts, Baton Rouge, Drew A. Ranier, Kenneth E. Badon, Norval F. Elliot, III, Badon & Ranier, Lake Charles, for applicant.
Michael G. Durand, Daniel G. Founerat, Onebane, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, for respondent.
Hal J. Broussard, Lafayette, for amicus curiae Louisiana Oilfield Contractors.
James C. Gulotta, Jr., Barry W. Ashe, New Orleans, for amicus curiae W.R. Grace & Co.
VICTORY, Justice.
The issue presented in this case is whether the Attorney General of the State of Louisiana has the authority to enter into contingency fee contracts with private attorneys to represent the State in enforcing the State's environmental laws. We find that absent legislative authorization, such contracts violate state law and are illegal.

FACTS AND PROCEDURAL HISTORY
The Attorney General entered into a "Contract for Professional Legal Services" (the "Contract") with two law firms, Domengeaux, Wright, Moroux and Roy, A Professional Law Corporation, and John D. Bernhardt, A Professional Law Corporation (collectively, "Intervenors"). Under the terms of the Contract, Intervenors are appointed as "Special Assistant Attorneys General" to investigate and prosecute state environmental damage claims on a contingency fee basis. Specifically, the Contract provides that if damages are recovered, Intervenors are entitled to "an amount equal to twenty-five percent (25%) of Gross Recovery,[1] if any ..." subject to a cap of "$10 million per claim to each of the two firms signing this Contract and $10 million each per claim to Approved Subcontractors listed in Paragraph 13.2, total claims not to exceed 1,000 claims," plus reimbursement of Qualifying Expenses. In addition, the Contract provides that outside counsel and the Attorney General will direct any person making a payment "constituting Gross Recovery" to pay the attorney fees payable under the Contract directly to outside counsel. To date, Intervenors have filed no state environmental damage claims pursuant to the Contract.
The Louisiana Independent Oil & Gas Association, Inc. ("LIOGA") and several of its individual members (collectively, "Plaintiffs") filed suit seeking a judicial declaration that the Contract was invalid under the Louisiana Constitution and statutory law and an injunction prohibiting the implementation *480 and enforcement of the Contract. The trial court overruled the Attorney General's exceptions of lack of standing, lack of a justiciable controversy and prematurity. After a hearing, the trial court held that the Contract was illegal inasmuch as it violated Article VII, Section 9 of the Louisiana Constitution and Louisiana Revised Statutes 30:2205. The First Circuit Court of Appeal agreed and affirmed. Meredith v. Ieyoub, 95-0719 (La.App. 1st Cir. 4/4/96), 672 So.2d 375.
We granted a writ to consider the Attorney General's assignments of error that the court of appeal erred (1) by not finding that the respondents lacked standing and that therefore the trial court lacked subject matter jurisdiction to decide the matters at issue; (2) in finding that the Contract violates state law. Meredith v. Ieyoub, 96-1110 (La.6/21/96), 675 So.2d 1094.

DISCUSSION

A. Standing
The Attorney General and Intervenors claim that the Plaintiffs lack standing to bring this suit because no suit has been instituted against them pursuant to the Contract. Plaintiffs assert that they have standing as taxpayers and as members of the industry that is the target of the Contract. The court of appeal found that, although the Plaintiffs "failed to offer proof that the actions of the Attorney General would, with certainty, increase their tax burdens," because they were seeking to restrain a public body from alleged unlawful action, other methods of proof were available. 672 So.2d at 378. The court of appeal found standing based on Plaintiffs' "fear they may be called upon to defend potentially groundless claims as targets of an environmental `witch-hunt'." Id.
We explained the requirements for standing when a party seeks to restrain a public body from alleged unlawful action in Alliance For Affordable Energy v. Council of City of New Orleans, 96-0700 (La.7/2/96), 677 So.2d 424. In that case, the Alliance for Affordable Energy sought to restrain the New Orleans City Council from entering into professional service contracts with certain utility consultants in violation of the New Orleans City Charter. We held that "because plaintiffs seek to restrain the City Council from entering into certain contracts allegedly through an illegal process, plaintiffs are not required under League of Women Voters [v. City of New Orleans, 381 So.2d 441 (La.1980)] and its progeny to demonstrate a special or particular interest" which is distinct from the public at large. 677 So.2d at 429. "Rather, plaintiffs are afforded a right of action upon a mere showing of an interest, however small and indeterminable." Id. Although in that case we found that the plaintiffs had proven that the action constituted a burden on their tax base, we also held that plaintiffs' interest in the health and welfare of the residents of Orleans Parish was sufficient for standing purposes. Id.
Here, the individual members of LIOGA, who would be subject to law suits filed by Intervenors under the Contract, clearly have an interest and therefore have standing to institute this action to restrain the Attorney General from entering into the Contract allegedly in violation of the Constitution and statutory law.
In addition, LIOGA has standing under the requirements for organizational or associational standing set forth in La. Associated General Contractors, Inc. v. State Through Division of Admin., Office of State Purchasing, 95-2105 (La.3/8/96), 669 So.2d 1185, 1190-1191. "An association will have standing to bring a suit solely on behalf of its members and in the absence of injury to itself when:
(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members of the lawsuit.
669 So.2d at 1190 (citing Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). We have already stated that the individual members have standing to sue in their own right. In addition, LIOGA claims it is seeking to protect against lawsuits motivated *481 by money, the looming specter of a dual system of regulation of the environment by different agencies of the state, and the loss of financing of oil and gas projects, all of which are germane to the organization's purpose, which is to protect the interests of independent oil men. Finally, this declaratory judgment and injunctive relief action does not require the participation of LIOGA's individual members.
Accordingly, all Plaintiffs have standing to bring this action.

B. Validity of the Contract under State Law
The separation of powers doctrine, enunciated in Article II, § 2 of the Louisiana Constitution, provides as follows: "Except as otherwise provided by this constitution, no one of these branches, nor any person holding office in one of them, shall exercise power belonging to either of the others." La. Const. Art. II, § 2. "Unlike the federal constitution, a state constitution's provisions are not grants of power but instead are limitations on the otherwise plenary power of the people of a state exercised through its legislature." Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 286 (La.1986).
"It is elementary that the `fiscal affairs of the state, the possession, control, administration, and disposition of the property, funds, and revenues of the state, are matters appertaining exclusively to the legislative department.' " State v. Duhe, 201 La. 192, 9 So.2d 517, 521 (1942) (citing Carter v. State, 42 La.Ann. 927, 933, 8 So. 836, 837 (1890)). This long-standing principle also applies under the 1974 Constitution, as we have more recently held that "[t]he legislature has control over the finances of the state, except as limited by constitutional provisions." Louisiana Ass'n of Educators v. Edwards, 521 So.2d 390, 394 (La.1988). There, we further elaborated on the separation of powers doctrine, holding that "[e]xcept as expressly provided by the constitution, no other branch of government, nor any person holding office in one of them, may exercise the legislative function." Id. (Emphasis added).
It is also fundamental that "[t]he legislative power of the state is vested in the Legislature." Board of Commissioners, supra at p. 286 (citing La. Const.1974, Art. III, § 1). "In its exercise of the entire legislative power of the state, the Legislature may enact any legislation that the state constitution does not prohibit." Id. We find nothing in the state constitution which prohibits the Legislature from enacting statutes enabling the Attorney General to enter into contingency fee contracts with outside attorneys.
Thus, under the separation of powers doctrine, unless the Attorney General has been expressly granted the power in the constitution to pay outside counsel contingency fees from state funds, or the Legislature has enacted such a statute, then he has no such power. The question is not, as the Attorney General and Intervenors argue, whether any law prohibits the Attorney General from entering into such contracts because, as we have seen, our constitution vests the power over state finances in the legislative branch as part of its plenary power, a power the Attorney General can obtain only by the constitution or other law.
Thus, we first look for express authority for the Attorney General to enter into the Contract in the constitution. The authority of the Attorney General, part of the executive branch of government, is set out in Article IV, § 8 of the Louisiana Constitution as follows:
There shall be a Department of Justice, headed by the attorney general, who shall be the chief legal officer of the state. The attorney general shall be elected for a term of four years at the state general election. The assistant attorneys shall be appointed by the attorney general to serve at his pleasure.
As necessary for the assertion or protection of any right or interest of the state, the attorney general shall have authority (1) to institute, prosecute, or intervene in any civil action or proceeding; (2) upon the written request of a district attorney, to advise and assist in the prosecution of any criminal case; and (3) for cause, when authorized by the court which would have original jurisdiction and subject to judicial *482 review, (a) to institute, prosecute, or intervene in any criminal action or proceeding, or (b) to supersede any attorney representing the state in any civil or criminal action.
The attorney general shall exercise other powers and perform other duties authorized by this constitution or by law.
The Attorney General and Intervenors argue that the Attorney General's powers to institute civil proceedings and to appoint assistant attorneys includes the inherent authority to hire outside attorneys on a contingency fee basis to prosecute these claims. We disagree. Paying outside attorneys to prosecute legal claims on behalf of the state is a financial matter. As our prior jurisprudence indicates, the power over finances must be expressly granted by the constitution to another branch of government or else that power remains with the Legislature. We find nothing in Article IV, § 8, nor any other constitutional provision, which expressly grants the attorney general the power to hire and pay outside legal counsel on a contingency fee basis. The power to institute suit on behalf of the state, while extremely broad, does not expressly give him this power. Nor does the power to appoint assistant attorneys to serve at his pleasure. This provision applies to the Attorney General's staff, and even then, in order to hire and pay his staff, he must include these assistant attorneys in his budget request.
As the constitution does not expressly give the Attorney General the financial power to hire and pay outside attorneys on a contingency fee basis, we now look to statutory law to see if the Legislature has granted him this power under the Legislature's legislative power. When the Legislature has intended to allow the Attorney General to enter into contingency fee contracts in certain types of cases, it has done so by statute. See La. R.S. 23:1669(C) (contingency fees allowed in labor and worker's compensation cases); La. R.S. 41:724 (contingency fee lawyer allowed to deduct 10% before turning remainder over to state treasurer); La. R.S. 41:922 (contingency fees mandated in certain public land actions); La. R.S. 47:1512 (additional 10% attorney fee charge in tax recovery actions allowed where private attorney hired to assist in tax collection).
However, in environmental cases, the Legislature has stated just the opposite. La. R.S. 30:2205, establishing the Hazardous Waste Site Cleanup Fund, provides as follows:
A(1) All sums recovered through judgments, settlements, assessments of civil or criminal penalties, funds recovered by suit or settlement from potentially responsible parties for active or abandoned site remediation or cleanup, or otherwise under this Subtitle, or other applicable law, each fiscal year for violation of this Subtitle, shall be paid into the state treasury and shall be credited to the Bond Security and Redemption Fund. After a sufficient amount is allocated from that fund to pay all obligations secured by the full faith and credit of the state which become due and payable with any fiscal year, the treasurer, prior to placing such remaining funds in the state general fund, shall pay into a special fund, which is hereby created in the state treasury and designated as the "Hazardous Waste Site Cleanup Fund,"... the sums recovered through all judgments, settlements, assessments of civil or criminal penalties, fees and oversight costs received....
As noted by the lower courts, this provision expressly mandates that all recoveries in cases involving environmental legislation must be paid into the state treasury. The language of the statute is clear and unambiguous: "[a]ll sums recovered through judgments" means all sums, not all sums remaining after the Attorney General has paid his contingency fee lawyers. If the Legislature had intended to allow the Attorney General the right to deduct the fees of contingency fee lawyers from judgments or settlements in environmental cases before paying the remainder into the state treasury, surely it would not have clearly directed that "all sums recovered" be paid into the state treasury.[2]
*483 Furthermore, while it is beyond dispute that the Attorney General can hire private attorneys to represent the State,[3] he does not have unbridled discretion in this regard as numerous statutes set out specific requirements that must be met for professional service contracts, including the requirement of La. R.S. 39:1498(A) that the Office of Contractual Review must determine that "[t]here has been appropriated or otherwise lawfully made available and ready for expenditure sufficient monies for payment of the services called for in the contract, at least for the applicable fiscal year."[4]See also La. R.S. 39:1497, 39:1498, 49:257, 49:258.
Next, the Attorney General and Intervenors point to La. R.S. 39:1509 as a grant of authority to enter into contingency fee contracts with outside attorneys. We cannot agree. La. R.S. 39:1509, concerning the types of contracts that may be used by state agencies in the procurement of professional, personal, consulting and social services, provides that "[s]ubject to the limitation of Section 1510 hereof, any type of contract which will promote the best interests of the state may be used." La. R.S. 39:1510 provides that "[t]he cost-plus-a-percentage-of-cost system of contracting shall not be used." However, the types of contracts referred to in 39:1509 still need to be approved by the Commissioner of Administration and placed in the budget. Furthermore, if this statute gave the Attorney General the express authority to enter into contingency fee contracts, it would be redundant for the Legislature to enact statutes giving the Attorney General power to enter into such contracts in certain types of cases. In addition, it is evident that the Legislature was not intending this to be a blanket approval of contingency fee contracts because the definition of "contract" in La. R.S. 39:1484(5) does not include contingency fee contracts, but provides as follows:
"Contract" means every type of state agreement, including orders and documents purporting to represent grants, which are for the purchase or disposal of supplies, services, construction, or any other item. It includes awards and notices of award; contracts of a fixed price, cost, cost-plus-a-fixed-fee, or incentive type; contracts providing for the issuance of job or task orders, and letter contracts. It also includes contract modifications with respect to any of the foregoing.
Clearly, La. R.S. 39:1509 is not authority for the Attorney General to enter into contingency fee contracts in environmental cases without legislative authorization.
Finally, the Attorney General and Intervenors argue that La. R.S. 37:218 gives the Attorney General authority to enter into contingency fee contracts without legislative authorization. La. R.S. 37:218 is the general law allowing Louisiana attorneys to enter into contingency fee contracts with their clients with the clients' written approval. Even if we were to accept the argument that this article applies to the Attorney General and not just private attorneys, the Attorney General would still need the client's approval, in this case the State through the Legislature.

*484 CONCLUSION
It is within the power of the Legislature to authorize contingency fee contracts and it has not done so in this case. Until the Legislature enacts a statute authorizing the Attorney General to enter into contingency fee contracts, the Contract is invalid and may not be implemented or enforced.

DECREE
For the foregoing reasons, the judgment of the court of appeal is affirmed.[5] AFFIRMED.
KNOLL, J., not on panel.
KIMBALL, J., concurs in result and assigns reasons..
CALOGERO, C.J., and LEMMON, J., dissent and reasons.
JOHNSON, J., dissents.
KIMBALL, Justice, Concurring in result.
I am concurring in the result only of the majority opinion because I disagree with the content and necessity of the majority's discussion of the budget process, specifically footnote 4. I do not believe it is necessary for an agency to submit specific terms and conditions of specific contracts to the Legislature for approval where the contracting for professional services is involved.
I firmly agree with the result reached in this case, however. The provisions contained in our state's constitution are not grants of power but are instead limitations on the otherwise plenary power of the people as exercised through its Legislature. Thus, it is the Legislature which has the plenary power to do all things which are not otherwise delegated to another branch of government by the constitution and which are not otherwise prohibited by the constitution. See Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 286 (La.1986). This legislative power obviously includes the control of state finances, which, by its very definition would include the power to dispose of, disburse, or alienate state property. Thus, unless the state constitution explicitly gives this power to another branch of the government, then such power cannot be exercised by anyone other than the Legislature. Therefore, the sole issues to be resolved are whether the execution of a contingency fee contract by the Attorney General would result in the disposition or alienation of state funds and, if so, whether our constitution gives the Attorney General the authority to hire attorneys on a contingency fee basis.
The disputed legal claim which the Attorney General seeks to enforce by hiring attorneys on a contingency fee basis is a cause of action which is owned by the State of Louisiana. A cause of action has intrinsic value even before settlement or final judgment as illustrated by the fact that it can be sold or inherited. Therefore, when the Attorney General signs a contingency fee agreement, he is alienating the state's property, a power which resides solely in the Legislature. Unless the constitution or the Legislature specifically grants this power to the Attorney General, such an action is prohibited. I find no express grant of such authority in our constitution or statutory law. This is especially clear in light of the fact that the Legislature knows how to authorize the Attorney General to enter into contingency fee contracts and, in fact, has done so for specific limited types of cases as listed by the majority.
The Attorney General may be correct that it is in the State's best interests to allow him to hire private attorneys to pursue these claims under a contingency fee contract because it provides the State with a vehicle for obtaining recovery which does not expose the State to having to pay attorneys' fees up front. If such is the case, however, it is up to the Legislature to authorize the Attorney General to do so.
CALOGERO, Chief Justice, dissenting.
In my opinion, the majority is incorrect in concluding that the contingency contracts at issue violate the separation of powers doctrine. I do not agree that "[p]aying outside attorneys to prosecute legal claims on behalf *485 of the state is a financial matter" and thus is solely within the power of the legislature to exercise or delegate. While I agree that the legislature has the power of appropriation, I do not agree that the granting of contingency contracts is a matter of appropriation. Rather, the use of contingency contracts for legal representation is merely a vehicle for the Attorney General to exercise his constitutional authority to assert or protect a right or interest of the state. And the use of such a vehicle is not prohibited by the legislature. In fact, in certain instances the legislature actually mandates the use of contingency contracts[1]
There is nothing inherently suspect or illegal about the use of contingency contracts. Contingency contracts have long been utilized in Louisiana, both in the private and public sector. They serve an important societal function in ensuring representation is available where a litigant cannot afford legal fees. Likewise, the utility of contingency contracts in the public sector is great, for their usage optimally results in an award to the state without any diminution of state funds and prevents the draining of the public fisc by attorney's fees in the event of an unsuccessful claim.
I also believe the majority interprets La. R.S. 30:2205 too narrowly. The obvious purpose of this statute was to create and fund the Hazardous Waste Site Cleanup Fund to ensure that monies would be available for cleanup of hazardous waste sites.[2] Therefore, it is in the public interest to interpret this statute broadly to allow the deposit of monies into the Fund whenever possible, especially in this "win-win" situation where monies are deposited into the Fund if the State receives a judgment or settlement, and no money is expended from the Fund or the State fisc in the event the State does not receive a judgment or settlement in a particular action.
The majority bases its conclusion that the contingency contracts are prohibited by statute, in part, upon a very narrow interpretation of the word "recovered". I disagree with that conclusion. The majority's interpretation is contradicted by the fact that there is no express constitutional prohibition on contingency fee contracts, that contingency fee contracts are customarily used and in some instances are mandated, that the Attorney General has broad powers to protect the rights and interests of the State, and that the intent of La. R.S. 30:2205 is to generate funds for environmental protection purposes. Considering these factors, surely the Legislature would have been explicit if it had intended to prohibit the use of contingency contracts by the language of La. R.S. 30:2205. I believe that in this case, a reasonable interpretation of the sum "recovered" by the client, as contemplated by La. R.S. 30:2205, is the amount of the judgment or settlement less the contingency fee, just as the amount of property taxes recovered by a sheriff is the amount collected less the commissions.
There is no express constitutional prohibition against the use of contingency contracts. Article IV, Section 8, La. Const. of 1974 designates the Attorney General as the chief legal officer of the state, and the Attorney General has broad authority to act as necessary "for the assertion or protection of any right or interest of the state".... Certainly, these contingency contracts were entered into in order to assert or protect an interest of the State.
Accordingly, I dissent.
LEMMON, Justice, dissenting.
The majority bases its decision, in part, on La.Rev.Stat. 30:2205, characterizing that statute as the "opposite" of a Legislature grant of authority for contingency fee contracts *486 to recover damages caused by violations of environmental laws and implying that the statute was a legislative denial of such authority. However, the Legislature has never expressly prohibited the use of contingency fee contracts in such cases, although it demonstrated such know-how by expressly prohibiting cost-plus contracts.
La.Rev.Stat. 30:2171-2206 comprise the Louisiana Hazardous Waste Control Law, which was intended "to authorize the development, implementation, and enforcement of a comprehensive state hazardous waste control program." La.Rev.Stat. 30:2172. The Hazardous Waste Control Law, which contains in detail the power and authority of the Department of Environmental Quality (DEQ) in this area, also creates several funds, including the Underground Storage Tank Trust Fund (Section 2195), the Hazardous Waste Protection Fund (Section 2198), and the Hazardous Waste Site Cleanup Fund (Section 2205). Section 2205 immediately follows specific prohibitions in Section 2202 regarding hazardous waste, a requirement in Section 2203 of prompt remediation when hazardous waste enters ground waters, and authority in Section 2204 for ordering owners and operators to clean up hazardous wastes that constitute environmental hazards.
Section 2205 A(1)[1] does not expressly prohibit contingency fee contracts for lawyers who litigate claims by the state against persons responsible for environmental conditions and damages. Moreover, Section 2205 A(1) contains much more than the introductory sentence relied upon by the lower courts as impliedly prohibiting such contingency fee contracts.
The primary purpose of Section 2205 was to establish the Hazardous Waste Site Cleanup Fund. Enactment of the statute insures that money recovered from prosecuting environmental offenders goes into this cleanup fund (after payment of secured obligations), rather than into the state treasury's general fund, in accordance with controlling constitutional provisions.
Under La. Const. art. VII, § 9(B)[2], state money deposited in the state treasury first goes into the treasury's Bond Security and Redemption Fund before going into the general fund or other funds such as the Hazardous Site Cleanup Fund. An amount is *487 allocated annually from the Bond Security and Redemption Fund sufficient to pay all obligations for the fiscal year secured by the full faith and credit of the state, and the remainder goes into the general fund unless otherwise provided by law.
Section 2205 A, besides creating the Hazardous Waste Site Cleanup Fund, is an "otherwise provided by law" provision which authorizes payment into that fund of "all sums received" through settlements and judgments in claims against environmental offenders after the required payment of obligations from the Bond Security and Redemption Fund.
Since the Legislature clearly intended by Section 2205 A(1) to establish the Hazardous Waste Site Cleanup Fund and to dedicate part of the state's recovery from settlements or judgments in claims against environmental offenders into that Fund (after payment first into the Bond Security and Redemption Fund), there is no reasonable basis for inferring any intent in Section 2205 A(1) to prohibit use of contingency fee contracts to accomplish such recovery. In the light of this discussion, there also is no reasonable basis for interpreting the phrase "all sums recovered" as intended to preclude the deduction of contingency fees from the gross recovery of environmental damages before the payment of the net recovery by the state into the state treasury. If the Legislature intended to enact Section 2205 A(1) in order to prohibit use of contingency fees in environmental damage cases, much clearer language was certainly available to express that purpose.
The more difficult issue is whether the contract infringes upon the Legislature's constitutional power of appropriation and thus violates the constitutionally required separation of powers. Plaintiffs argue that the Legislature must appropriate the money for payment of contractual attorney's fees included in the Attorney General's budget or must authorize in advance the Attorney General's commitment to future expenditures for attorney's fees from recovery made on the state's claim. Plaintiffs contend in effect that only the legislative branch can decide whether a portion of the state's claim can be committed to the attorney's fees and expenses associated with recovery on the claim. Thus, according to plaintiffs, legislative authorization is needed to pay attorney's fees under a contingency fee contract, just as a legislative appropriation would be needed to pay attorney's fees under an hourly fee contract. Amicus curiae further argues that enactment of a contingency fee statute constitutes an exercise of the Legislature's constitutional authority to appropriate public money by constructively appropriating, in anticipation of the state's recovery on the claim, the contingency fee to the payee designated in the statute.
The Attorney General argues that if he is denied the use of contingency fee contracts, many meritorious claims for environmental damages will go unprosecuted. He contends that the difficulties in the political process of obtaining legislative action against powerful special interest groups will ultimately result in the causation or continued existence of extensive environmental damage. He further argues that the contract at issue, rather than taking money out of the state treasury, will result in placing money into the treasury that would not otherwise be there.
La. Const. art. III, § 16 provides for the Legislature's annual appropriation function, prohibiting the withdrawal of money from the state treasury except through a specific appropriation by the Legislature for a period of no longer than one year. This section by its terms does not apply in the present case because there is no withdrawal from the state treasury. The issue is therefore whether the Legislature's exclusive power of appropriation encompasses the necessity of a constructive appropriation, in advance of recovery, of funds for attorney's fees and expenses out of a conditional recovery some time in the future on a legal claim owned by the state.
The Legislature has plenary power to do all things not limited by the Constitution or otherwise delegated in the Constitution. Chamberlain v. State Through Dep't. of Transp. and Dev., 624 So.2d 874 (La.1993). The issue in this case, however, is not whether the Legislature has the power to enact a law prohibiting the use of contingency fee *488 contracts by the Attorney General, but whether the Attorney General can validly use, without legislative authorization, a contingency fee contract in exercising his constitutional power to file suit on the state's claims and his legislative authority to employ private attorneys in the litigation on any contractual basis, other than a cost-plus basis, that is beneficial to the state.
I do not find any express or implied constitutional or legislative requirement for legislative approval of the Attorney General's contracting to pay attorney's fees and costs of recovery out of the funds created by successful litigation of the state's environmental damages claims. While plaintiffs argue that only the Legislature has the power to dispose of property belonging to the state, a disputed legal claim is a unique type of property in that its value can only be realized through a legal settlement or litigation.[3] Once the value of the state's disputed claims is realized through settlement or judgment, the money or property ultimately recovered for the state by its constitutionally authorized officer, after deduction of the costs of recovery, is the property that the Legislature has the exclusive power to dispose of.
While there are persuasive arguments favoring the "no advance paymentno risk" contractual arrangements for attempting recovery through difficult and expensive litigation, there are also persuasive arguments against such contracts. The question is more one of policy than of legislative power. If the Legislature considers such contracts in this type of litigation to be imprudent policy, then a legislative enactment prohibiting such contracts may be appropriate, subject to possible challenges by the Attorney General. In the meantime, there is no constitutional or statutory barrier to the discretionary use of such contracts by the Attorney General.
NOTES
[1] "Gross Recovery" is defined as "the aggregate of all sums of money, including future benefits or payments (excluding any annual royalties, rentals, bonuses or other payments) and/or any civil or other penalties of fines, and the present fair market value or equivalent of non-monetary items (including but not limited to any on-site or off-site remediation, mitigation, restoration, clean-up or other response) which become payable, deliverable or performable or which are paid to and received by or for the state, and/or the state through counsel, the Attorney General, or any agent or employee of any of the foregoing in settlement or satisfaction of all or any part of any claim and determined before the deduction of any sums due counsel in payment or reimbursement of any attorney's fee or Qualifying Expenses due under the Agreement."
[2] Since the payment provisions of the Contract violate La. R.S. 30:2055(A) and the separation of powers doctrine, it is unnecessary to reach the question of whether the Contract also violates La. Const. art. VII, § 9(A), providing that "[a]ll money received by the state or by any state board, agency or commission shall be deposited immediately upon receipt in the state treasury,...."
[3] In fact, the legislature has, within the statutes applicable to the Attorney General, created the "Department of Justice Claims Recovery Fund," consisting of "an amount equal to the amount of proceeds received by the state from court-awarded judgments and settlements," after these amounts have first been deposited into the state treasury Bond and Security Redemption Fund and "a sufficient amount is allocated from that fund to pay all obligations secured by the full faith and credit of the state...." La. R.S. 49:259(C). That statute further provides that the "monies in the fund shall be available for appropriation by the legislature to the Department of Justice solely for the purpose of paying the salaries of Department of Justice employees, the general operating expenses of the department, and defraying the costs of ... contract legal counsel...."
[4] In addition, clearly when the Attorney General hires outside attorneys on an hourly basis he must include this in a budget request under La. R.S. 39:1, et seq.
[5] Plaintiffs also filed a motion to supplement the record. This motion is denied.
[1] See, e.g., La. R.S. 41:922 and La. R.S. 46:15.
[2] Specifically, La. R.S. 30:2205(D) provides in part:

The monies in the Site Cleanup Fund shall be used to defray the cost of investigation, testing, containment, control, and cleanup of hazardous waste sites, to provide money or services as the state share of matching funds for federal grants, to defray the cost of securing and quarantining hazardous waste sites, including the acquisition of rights-of-way, easement, or title when necessary, and to pay the operating expenses of the inactive and abandoned sites divisions....
[1] Section 2205 A(1), the statute relied on by the lower courts, provides more fully as follows:

(1) All sums recovered through judgments, settlements, assessments of civil or criminal penalties, funds recovered by suit or settlement from potentially responsible parties for active or abandoned site remediation or cleanup, or otherwise under this Subtitle, or other applicable law, each fiscal year for violation of this Subtitle, shall be paid into the state treasury and shall be credited to the bond Security and Redemption Fund. After a sufficient amount is allocated from that fund to pay all obligations secured by the full faith and credit of the state which become due and payable within any fiscal year, the treasurer, prior to placing such remaining funds in the state general fund, shall pay into a special fund, which is hereby created in the state treasury and designated as the "Hazardous Waste Site Cleanup Fund", twenty-five percent of those funds generated by the hazardous waste tax under the provisions of Chapter 7-A of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950 and the sums recovered through all judgments, settlements, assessments of civil or criminal penalties, fees and oversight costs received from potentially responsible parties for the department's work in overseeing of assessment and remediation at inactive or abandoned sites, funds recovered by suit or settlement from potentially responsible parties for active or abandoned site remediation or cleanup, or otherwise, for violation of this Subtitle .... (emphasis added).
[2] La. Const. art. VII, § 9(A), relied on by plaintiff, provides in part:

All money received by the state or by any state board, agency, or commission shall be deposited immediately upon receipt in the state treasury....
However, Section 9(B) goes on to provide:
Subject to contractual obligations existing on the effective date of this constitution, all state money deposited in the state treasury shall be credited to a special fund designated as the Bond Security and Redemption Fund, except money received as the result of grants or donations or other forms of assistance when the terms and conditions thereof or of agreements pertaining thereto require otherwise. In each fiscal year an amount is allocated from the bond security and redemption fund sufficient to pay all obligations which are secured by the full faith and credit of the state and which become due and payable within the current fiscal year, including principal, interest, premiums, sinking or reserve fund, and other requirements. Thereafter, except as otherwise provided by law, money remaining in the fund shall be credited to the state general fund.
[3] The value of a disputed legal claim depends upon both the chance of recovery and the costs of recovery.