756 So.2d 719 (2000)
TOWN OF MAMOU
v.
Gerald FONTENOT, et al.
No. 99-1650.
Court of Appeal of Louisiana, Third Circuit.
April 12, 2000.
*720 J. Jake Fontenot, Mamou, Louisiana, Counsel for Plaintiff/Appellee-Town of Mamou.
Guy O. Mitchell, Ville Platte, Louisiana, Counsel for Defendants/Appellants-Gerald Fontenot and Lauren Landreneau Fontenot.
Chuck West, West & Vidrine, Ville Platte, Louisiana, Attorney for Defendant/Appellee-F. Peter Savoy, III.
Court composed of JIMMIE C. PETERS, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.
JIMMIE C. PETERS, Judge.
This case is before us on appeal from a summary judgment on the issues of the validity and scope of a contingency fee agreement for legal services between two attorneys and a Lawrason Act town.

DISCUSSION OF THE RECORD
The procedural history of this case is somewhat convoluted. The case initially began as a suit by the Town of Mamou (Town) seeking declaratory judgment on the issue of ownership of certain property in dispute with Gerald Fontenot and his wife, Lauren Landreneau Fontenot (hereinafter collectively referred to as Mr. Fontenot), or, in the alternative, judgment on the issue of the Town's entitlement to expropriate the property. The ownership and expropriation issues were settled, and a judgment of partial dismissal was entered as to those claims. Subsequently, through various pleadings, including "amended" petitions by the Town, an answer and reconventional demand by Mr. Fontenot, exceptions of nonjoinder of a party, and a cross-claim/third-party demand, F. Peter Savoy, III, was joined as a party-defendant and issue was joined regarding attorney fees allegedly retained by and/or owed to Mr. Fontenot and Mr. Savoy under a contingency fee agreement with the Town.
The contingency fee agreement at issue was confected in connection with the Town's desire to obtain an accounting and collection of funds from Savoy Memorial Foundation, Inc. (SMF), and Mamou Health Resources, Inc. (MHR). It is undisputed that the Town had appointed SMF to manage Savoy Memorial Hospital, which the Town had purchased in 1978, and MHR to manage Savoy Care Center, a nursing home constructed on hospital property. It is also undisputed that on February 1, 1995, the Town entered into a lease agreement with Columbia Hospital, Inc., through a subsidiary known as Notami, in which Notami was to run the hospital. Further, it is undisputed that at that time MHR agreed to continue collecting funds that were due prior to February 1, 1995.
*721 Mr. Fontenot was the Town's attorney, and, on February 7, 1996, the mayor and board of aldermen for the Town held a special meeting to consider (1) requesting from MHR and SMF an accounting of all funds collected and held for the Town in connection with the operation of the hospital, (2) authorizing Mr. Fontenot to pursue the accounting and collection of the funds, and (3) hiring additional counsel if necessary to assist Mr. Fontenot in that regard. The Town did in fact authorize those actions at that time. Additionally, according to the transcript of the meeting, the Town authorized attorney fees of "25 percent of all amounts recovered before lawsuit is filed, 33 1/3 percent of all ... amounts recovered after suit is filed." Further, the Town authorized fees of the applicable percentage payable at the time of recovery on the present value of the recovery for "all amounts recovered wholly or partly on a structure, a settlement or deferred annuity basis." Mr. Savoy was chosen to assist Mr. Fontenot in his endeavors. On February 11, 1996, the mayor, Mr. Fontenot, and Mr. Savoy signed a document entitled "AGREEMENT FOR LEGAL SERVICES."
In one of its amending petitions, the Town alleged that Mr. Fontenot and Mr. Savoy directed Notami to issue a check from SMF to Mr. Fontenot in the amount of $750,791.00; that Mr. Fontenot endorsed the check and deposited the funds in a private account; that Mr. Fontenot disbursed one-third of the funds, or $250,263.66, to himself and Mr. Savoy; and that the attorneys remitted only $500,527.34 to the Town, in violation of Louisiana law, Town policy, and the contingency fee agreement. The Town sought, among other things, a declaration that the contingency fee agreement was null and void and a judgment for amounts overpaid to the attorneys. In his reconventional demand, Mr. Fontenot admitted that he and Mr. Savoy retained the $250,263.66 as attorney fees but alleged that otherwise the Town was in possession of all sums recovered as a result of the operation of the hospital. Additionally, Mr. Fontenot alleged in connection with the contingency fee agreement that further attorney fees were due to him and Mr. Savoy from the Town in the amount of $1,953,819.30, of which he sought one-half, or $976,909.65. The $1,953,819.30 represented thirty-three and one-third percent of the $5,861,457.80 the attorneys allegedly "recovered" on behalf of the Town.
The Town ultimately dismissed its claims against Mr. Savoy on the basis of a compromise and filed the instant motion for summary judgment against Mr. Fontenot on the issues of the validity and scope of the contingency fee agreement. Specifically, the Town asserted in its motion for summary judgment that there were no genuine issues of material fact and that it was entitled to partial summary judgment as a matter of law decreeing (1) that the February 7, 1996 resolution employing Mr. Fontenot on a contingency fee basis was unconstitutional and not authorized by Louisiana law, (2) in the alternative that the language of the resolution governed the contractual relationship between the parties and superceded the written contingency fee agreement to the extent that the written agreement was inconsistent with the resolution, and (3) that $2,150,000.00 in United States Treasury Bills (which Mr. Fontenot included in the $5,861,457.80 allegedly recovered by the attorneys on behalf of the Town) were not subject to the February 7, 1996 resolution or the written contingency fee agreement.
The trial court granted the motion for summary judgment, decreeing that the February 7, 1996 resolution was invalid because it lacked constitutional and legislative authorization, violated the constitutional prohibition against donation of public funds, and was inconsistent with other legislation dealing with public funds. The trial court also decreed that the written contingency fee agreement was also invalid because it was neither authorized nor ratified by the board of aldermen and *722 was inconsistent with and broader than the February 7, 1996 resolution. The trial court further disallowed any fee concerning the $2,150,000.00 in treasury bills. The trial court certified the partial summary judgment as a final, appealable judgment. Mr. Fontenot has appealed.

OPINION

Contingency Fee Agreement
The trial court found that the Town's hiring of the attorneys on a contingency fee basis lacked both constitutional and statutory authority since the Town is a Lawrason Act town. Mr. Fontenot contends that the trial court erred in so holding.
La. Const. art. VI, § 7 provides in part:
(A) Powers and Functions. Subject to and not inconsistent with this constitution, the governing authority of a local governmental subdivision which has no home rule charter or plan of government may exercise any power and perform any function necessary, requisite, or proper for the management of its affairs, not denied by its charter or by general law, if a majority of the electors voting in an election held for that purpose vote in favor of the proposition that the governing authority may exercise such general powers. Otherwise, the local governmental subdivision shall have the powers authorized by this constitution or by law.

(Emphasis added.)
The Town asserts that it has never conducted an election on the issue and therefore has only those powers authorized by the constitution or law. It further asserts that there is no constitutional authorization for the Town to engage attorneys on a contingency fee basis. Additionally, the Town points us to the reasoning in Meredith v. Ieyoub, 96-1110 (La.9/9/97); 700 So.2d 478, and Ieyoub v. W.R. Grace & Co.-Conn., 97-728 (La.App. 3 Cir. 3/6/98); 708 So.2d 1227, as persuasive authority for concluding that the supreme court would not enforce a contingency fee contract with a Lawrason Act municipality because neither the constitution nor the legislature has authorized contingency fee contracts between an attorney and a Lawrason Act municipality.
Indeed, in Meredith, the supreme court held that, absent legislative authorization, contingency fee contracts between the attorney general and private attorneys to represent the state in enforcing the state's environmental laws were illegal and violated state law. Specifically, the supreme court noted that the fiscal affairs of the state are matters pertaining exclusively to the legislature and that the payment of outside attorneys to prosecute legal claims on behalf of the state is a fiscal matter. Thus, the supreme court found that, under the separation of powers doctrine, unless the attorney general had been expressly granted the power in the constitution to pay outside counsel contingency fees from state funds or the legislature had enacted such a statute, then the attorney general had no such power. The supreme court found no such grant of power in the constitution or by statute. Ieyoub was an application of the pronouncement in Meredith.
However, unlike Meredith and Ieyoub, the legislature has specifically authorized the mayor, subject to confirmation by the board of aldermen, to "appoint and fix compensation for an attorney at law for the municipality, whose duties in such capacity may include ... duties as prescribed by the mayor. The municipality may also employ counsel to represent its interest should the occasion require."[1] La. R.S. 33:386(C) (emphasis added). Moreover, the legislature has vested the legislative powers of a Lawrason Act municipality *723 with the board of aldermen, see La.R.S. 33:362, unlike its retention of that power vis-à-vis the attorney general in the Meredith and Ieyoub cases. Thus, we find that Meredith and Ieyoub are not applicable to the case at hand.
It is not disputed that the Town, through the mayor and board of aldermen, actually fixed Mr. Fontenot's "compensation" as a contingency fee through the February 7, 1996 resolution. While La. R.S. 33:386(C) does not define "compensation," La.R.S. 1:3 provides in part that "[w]ords and phrases shall be read with their context and shall be construed according to the common and approved usage of the language." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1989) defines compensation in part as "PAYMENT, REMUNERATION." La.R.S. 33:386(C) does not confine the method of that payment or remuneration to hourly wages but grants discretion to "fix" the payment or remuneration for the attorney. Further, Rule 1.5(c) of the Rules of Professional Conduct allows attorney fees to be "contingent on the outcome of the matter for which the service is rendered except in a matter in which a contingent fee is prohibited." Additionally, La.R.S. 37:218(A) provides in part that "an attorney at law may acquire as his fee an interest in the subject matter of a suit, proposed suit, or claim in the assertion, prosecution, or defense of which he is employed." Because La.R.S. 33:386(C) grants the Town authority to fix compensation and because the method of fixing the payment or remuneration of an attorney is not prescribed but is discretionary and because the payment or remuneration of an attorney may be contingent on the outcome of the matter for which the service is rendered, we hold that the trial court erred in finding that the Town lacked constitutional and statutory authority to fix the attorneys' compensation as a contingency fee.
The trial court also found that the reasonable value of the attorney services was Mr. Fontenot's normal hourly billing rate, rather than the contingency fee amount, and further found that the resolution by the municipality authorizing payment of fees over the reasonable value of the attorney services violated La. Const. art. VII, § 14(A) because it constituted a prohibited donation of public funds. La. Const. art. VII, § 14(A) provides in part:
(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
As set forth above, Rules of Professional Conduct Rule 1.5(c) permits an attorney fee to be contingent on the outcome of the matter for which the attorney renders the service, unless such a fee is otherwise prohibited by law. Additionally, La.R.S. 37:218(A) allows an attorney to acquire as his fee an interest in the subject matter of a suit for which he is employed. Because payment on a contingency fee basis is a valid method of payment in exchange for services, that method is not in and of itself a donation or unearned gift. Thus, to the extent that the trial court found that a contingency fee automatically violates La. Const. art. VII, § 14(A) because it does not reflect the reasonable value of an attorney's services, it erred as a matter of law.
However, under Rules of Professional Conduct Rule 1.5(a), an attorney fee, whether contingent or otherwise, must still be "reasonable." We find that to the extent that an attorney fee is not reasonable, it is not earned, and the remittance of an attorney fee by the Town above that which is reasonable would be an impermissible donation of public funds. However, whether an attorney fee is reasonable requires analysis of several factors, including (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment *724 will preclude other employment by the lawyer, if such likelihood is apparent to the client; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results the attorney obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is a fixed fee or a contingent fee. Rules of Professional Conduct Rule 1.5(a)(1)-(8).
An analysis of these factors is extremely fact intensive. The trial court made a factual finding that the contingency fees exceeded the reasonable value of the services rendered and that the reasonable value of the services was Mr. Fontenot's normal hourly billing rate. It is not the trial court's function on a motion for summary judgment to determine or even inquire into the merits of the disputed factual issues that are presented. Lexington House, v. Gleason, 98-1818 (La.App. 3 Cir. 3/31/99); 733 So.2d 123, writ denied, 99-1290 (La.6/25/99); 746 So.2d 603. Thus, the trial court erred in holding that the February 7, 1996 resolution violated La. Const. art. VII, § 14(A).
The trial court also found that the resolution engaging Mr. Fontenot on a contingency fee basis was inconsistent with La.R.S. 39:1211-1213. Those statutes address the daily depositing of funds by local depositing authorities, including municipalities. La.R.S. 39:1212 provides:
After the expiration of existing contracts, all funds of local depositing authorities shall be deposited daily whenever practicable, in the fiscal agency provided for, upon the terms and conditions, and in the manner set forth in this Chapter. Deposits shall be made in the name of the depositing authority authorized by law to have custody and control over the disbursements.
La.R.S. 39:1213 provides that the fiscal agency with which the funds are deposited must be a bank organized under the laws of any state or under the laws of the United States as selected by the depositing authority.
Specifically, the resolution in the instant case provided that the attorneys would obtain their fees "up front." Mr. Fontenot admitted that he did in fact retain $250,263.66 in attorney fees. In other words, all of the funds were not initially deposited in the Town's bank. Even assuming, without deciding, that a technical violation of La.R.S. 39:1212 occurred, that violation would not have eviscerated and dissolved the Town's authority under La.R.S. 33:386(C) to initially enter into a contingency fee agreement such that Mr. Fontenot would have thereafter been relegated to recovering only an hourly wage. Rather, issues regarding any such violation in that regard are not now before us on appeal.
The trial court also found the contingency fee contract invalid because Mr. Fontenot's actions in having a certain check made payable to himself and in failing to deposit that check in the Town's account caused the Town to be in violation of La. R.S. 24:514, 33:422, and 33:425, which deal with auditing and bookkeeping.[2] Again, even assuming, without holding, that the trial court were correct in that regard, such violation would not have eviscerated or dissolved the Town's authority to initially enter into the contingency fee agreement. Again, any such violation raises issues not now before us on appeal.
Further, the trial court found that more than likely Mr. Fontenot also violated La. R.S. 33:561, which prohibits a municipal *725 officer, employee, or agent from being financially interested in any contract for the performance of work for the municipality. However, La.R.S. 33:561 does not apply to Lawrason Act municipalities but applies to the Commission Plan of government for municipalities established by La.R.S. 33:501, et seq.
We do note that La.R.S. 33:385(C) provides that no member of the board of aldermen or any other officer of the corporation shall be directly or indirectly interested in any work or contract the consideration of which is to be paid from the municipality's treasury. As set forth above, La.R.S. 37:218(A) provides that an attorney may acquire as his fee an interest in the subject matter of a suit. However, as explained in Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102 (La.1978), while La.R.S. 37:218(A) allows the attorney to secure an interest in his client's claim, the nature of that interest is no more than a privilege granted to aid the attorney in collecting a fully earned fee out of the fund which the satisfaction of the client's claim yields. We do not find that a contingency fee violates the intent of La. R.S. 33:385(C) to prevent conflicts of interest; rather, the contingency fee is merely a method of payment for services of the attorney who may be hired by the municipality pursuant to La.R.S. 33:386(C). Thus, we do not find that a contingency fee in and of itself violates La.R.S. 33:385(C).

Written Contingency Fee Contract
The trial court also found that the written contingency fee contract of February 11, 1996, signed by the mayor, Mr. Fontenot, and Mr. Savoy, was invalid to the extent that it was inconsistent with the February 7, 1996 resolution authorizing the contingency fees. Additionally, the trial court found it invalid because the mayor did not have the authority to sign the contract.
The February 7, 1996 resolution authorized Mr. Fontenot "to go ahead and ask for an accounting and do some collection, if necessary, according to the accounting we'll get concerning the funds that were collected by either Mamou Health Resources, Inc., and Savoy Memorial Foundation, Inc., formerly Savoy Medical Center, Inc., concerning the operation of the hospital." Further, the resolution provided for attorney fees of "25 percent of all amounts recovered before lawsuit is filed, 33 1/3 percent of all ... amounts recovered after suit is filed and for all amounts recovered wholly or partly on a structure, a settlement or deferred annuity basis the applicable percentage shall be due at the time of recovery on the present value of the recovery." Additionally, the resolution authorized hiring additional counsel to assist Mr. Fontenot in his endeavors and provided that all compromises had to be made with the approval of the attorneys and the Town.
The written contingency fee contract signed by the mayor, Mr. Fontenot, and Mr. Savoy on February 11, 1996, provided in part that the Town employed and retained the attorneys for representation in the matter of a claim arising out of the following:
FUNDS/MONIES OWED TO THE TOWN OF MAMOU, LOUISIANA BY MAMOU HEALTH RESOURCES, INC. AND SAVOY MEMORIAL FOUNDATION, INC. (FORMERLY SAVOY MEDICAL CENTER, INC.), A NON-FOR-PROFIT [sic] ORGANIZATION, OR ANY OTHER ENTITY DERIVING FUNDS/MONIES FROM THE OPERATION OF SAVOY MEDICAL CENTER, SAVOY MEMORIAL HOSPITAL OR ANY OTHER NAME USED FOR THE MAMOU HOSPITAL.
[The Town] hereby authorizes and empowers Attorneys to investigate, prosecute, and collect, whether by suit, compromise, or otherwise, [the Town's] claim against any and all persons, corporations, insurers, or other entities who said Attorneys believe might be responsible therefor.

*726 Attorneys undertake said employment and agree to render said services and agree to assert [the Town's] position diligently, and in consideration of services rendered and/or to be rendered, [the Town] does hereby agree to pay Attorneys:
Twenty-Five percent (25%) of all amounts recovered before suit is filed. Thirty-Three and One-Third percent (33 1/3%) of all amounts recovered after suit is filed.
For any amount recovered wholly or partly on a structured settlement or deferred annuity basis, the applicable percentage shall be due at the time of recovery on the present value of the recovery.
[The Town] hereby assigns and irrevocably conveys to Attorneys an interest in the aforementioned claim or claims according to the above agreement, and it is specifically agreed that the Attorneys have a vested interest in the claim or claims and suit or suits to that extent.
The Town submitted the affidavits of members of the board of aldermen which stated that the board had never approved or authorized the written contingency fee agreement and had not authorized the mayor to sign the written agreement, although the board members acknowledged that they authorized legal work on a contingency fee basis in accordance with their resolution of February 7, 1996. La.R.S. 33:404(A)(4) gives the mayor the power "[t]o sign all contracts on behalf of the municipality." Contract interpretation is the determination of the common intent of the parties. La.Civ. Code art.2045. Whether the written contract conformed to the intent of the parties as reflected in the resolution is a question of fact inappropriate for resolution in this motion for summary judgment. See Penalber v. Blount, 550 So.2d 577 (La.1989) (holding that summary judgment is rarely appropriate for a determination based on subjective facts such as intent). Moreover, there are issues of fact regarding whether the written contract may be reformed to reflect the intent of the parties.
Even so, an unauthorized contract of an agent may be ratified by the subsequent action or inaction of the principal once the principal is apprised of the facts. Sunray Servs., Inc. v. City of Minden, 29,260 (La.App. 2 Cir. 2/28/97); 690 So.2d 970, writ not considered, 97-1140 (La.6/20/97); 695 So.2d 1343. While the written contract was signed on February 11, 1996, we note that by resolution on February 14, 1996, a unanimous board of aldermen authorized the mayor to be the representative of the Town for any transactions involving Town funds. Moreover, the Town allowed Mr. Fontenot to work under the contract without taking specific legal action in that regard until January 6, 1999. Thus, there are material issues of fact regarding whether the Town ratified the written contract even if it did not conform to the resolution.

United States Treasury Bills
The $5,861,457.80 amount that Mr. Fontenot and Mr. Savoy allegedly recovered on behalf of the Town included $2,150,000.00 in treasury bills the Town received on January 31, 1995, from SMF/ MHR. Although the Town received the treasury bills prior to its engagement of Mr. Fontenot and Mr. Savoy on the contingency fee basis, Mr. Fontenot alleged that the attorneys were subsequently required to defend the Town's right to possession of those funds until settlement was reached in a lawsuit filed by the Town against SMF and MHR. Thus, Mr. Fontenot alleged that the Town owed attorney fees of $716,666.67, or thirty-three and one-third percent of the $2,150,000.00, in connection therewith, of which he claimed entitlement to one-half.
The Town submitted the affidavits of the four members of the board of aldermen who attended the February 7, 1996 special *727 meeting, all of which essentially stated in part:[3]
[T]he Board of Aldermen of the Town of Mamou has never authorized, by resolution or otherwise, any legal work or proceeding, nor has it agreed to pay Mr. Gerald Fontenot any contingent or percentage attorney fees whatsoever, concerning the $2,150,000.00 which the Town of Mamou received from Mamou Health Resources, Inc. and Savoy Memorial Foundation, Inc. on or about January 31, 1995, nor have they authorized Mr. Fontenot to defend or protect these funds.
On the other hand, Mr. Fontenot submitted his affidavit, in which he stated in part:
The $2.1 million dollars received by the Town of Mamou prior to the signing of the contract between the Town, Gerald Fontenot, and F. Peter Savoy, III, was specifically claimed by MHR in Paragraph 2 of the reconventional demand filed by MHR and because he was hired to file and defend that suit, he had authority to defend against MHR's claim for that money and is therefore entitled to a fee for successfully allowing the Town to keep that money. Deponent had several conversation [sic] with the council concerning the reconventional demand and the council desired that he protect these funds.

(Emphasis added.)
Mr. Fontenot also submitted a copy of the answer and reconventional demand filed on August 2, 1999, by MHR and SMF against the Town, which listed $2,100,000.00 as unpaid management fees and sought judgment awarding those fees in addition to other amounts. Additionally, Mr. Fontenot submitted an excerpt from a memorandum by MHR on a motion for summary judgment, which stated in part:
Sometime after February 2, 1995, the Town took possession, (without knowledge of or authorization from M.H.R.) of $2,150,000.00 of Treasury Bills purchased by M.H.R. with funds from the "Hospital Operating Fund." The Treasury Bills represented excess income above then current expenditures generated by the hospital and nursing home while it was being managed by M.H.R.
The Town has refused to re-deposit the 2.15 million dollars, in the "Hospital Operating Fund" where they would have been available to M.H.R. for payment of debts or obligations, which are past due, exceed the balance of the operating fund, and were incurred in the operation and management of the medical facilities by M.H.R.
(Footnotes omitted.)
In resolving the issue of whether Mr. Fontenot is entitled to a contingency fee on the $2,150,000.00, there are at least genuine issues of material fact regarding whether Mr. Fontenot had to defend the $2,150,000.00 and regarding whether the authorization of Mr. Fontenot's legal services encompassed the defense of the $2,150,000.00 against the parties from which he was hired to obtain an accounting and collection. The trial court erred in making factual findings in that regard in resolving the motion for summary judgment.

DISPOSITION
For the foregoing reasons, we reverse the summary judgment which the trial court granted in favor of the Town and remand for further proceedings consistent with this opinion. We assess costs to the Town to the extent allowed by law.
REVERSED AND REMANDED.
NOTES
[1] Although Mr. Savoy is not a party to this appeal due to the settlement between him and the Town, we note that the legislature has also authorized a municipality to "employ, fix the compensation for, and pay additional counsel in cases of extreme necessity." La. R.S. 33:1813.
[2] The trial court also cited La.R.S. 38:2195, which deals with the prohibition of provisions in public works contracts regarding the mandating of a public entity to assume liability for damages arising out of injuries or property damage caused by the negligence of anyone other than the public body. Therefore, it is not applicable to any issue in the motion for summary judgment.
[3] The members of the board of aldermen who submitted affidavits were Barry Rozas, J.L. Saucier, Phyllis Soileau, and Ricky Fontenot. Only the affidavit of Mr. Rozas was drafted slightly differently on this point than the affidavits of the others, but those differences were in form, not in substance.