404 So.2d 218 (1981)
Jonathan JACKSON, et ux.
v.
AMERICAN INSURANCE COMPANY, et al.
No. 81-C-0415.
Supreme Court of Louisiana.
September 8, 1981.
Rehearing Denied October 9, 1981.
Wellborn Jack, Jr., of Jack, Jack, Cary & Cary, Shreveport, for plaintiff-applicant.
Frank M. Walker, Jr., Lake Charles, James Gardner, for defendant-respondent.
*219 CALOGERO, Justice.
In this workmen's compensation lawsuit, the parents of a sixteen year old deceased, one Joe Dennis Jackson, complain principally of a Court of Appeal judgment reversing a $1,378.00 trial court award for funeral expenses. Contrary to a finding of the district court, the Court of Appeal determined that decedent's drowning did not arise out of and in the course of his employment, 391 So.2d 1339.
The facts giving rise to this litigation are as follows. In the summer of 1978, the Coordinating and Development Council of Northwest Louisiana[1] adopted a program funded under the federal government's Comprehensive Employment and Training Act (CETA) which program was designed to provide summer employment for a nine week period to economically disadvantaged youths. Joe Dennis Jackson was one of several youths so employed by the program.
The youngsters were supervised by one Carolyn Huseth. Their duties included cutting grass, picking up litter, and doing general maintenance labor in and around the small community of Rodessa, Louisiana, in Caddo Parish. It was conceded at trial that the boys rarely worked a full eight hour day even though they usually received credit for four eight hour days per week.
On Thursday, August 10th, the last day of the summer program, Mrs. Huseth took the youngsters to do some work near the home of a Mr. Buehler, a municipal employee. At approximately 10:00 a. m. that morning, Mrs. Huseth informed the boys that, as she had promised earlier in the week, she would take them to a pond several miles out of Rodessa for a swimming party to celebrate the end of the program. There was testimony that the boys were informed that their attendance at the party was not mandatory, although this matter was in dispute at trial. Time sheets had already been turned in by Mrs. Huseth, giving all the boys credit for the concluding week's work, including Thursday, August 10th. With the exception of two boys who found their own way to the party, the group was transported to the pond by Mrs. Huseth in her truck. While wading at the pond, Joe Dennis Jackson accidentally drowned.
R.S. 23:1031 provides that an employer is obligated to pay compensation to an employee if the employee "... receives personal injury by accident arising out of and in the course of his employment...."
The trial court found that plaintiffs were entitled to compensation in that Jackson's death had arisen out of and in the course of his employment. The Court of Appeal reversed, finding no coverage under the statute for the reasons that 1) the accident did not occur on the employment premises, 2) the employer did not derive any substantial benefit from the activity which precipitated the death, and 3) decedent's participation at the party was entirely voluntary.
The Court of Appeal considered the foregoing three elements in determining that the employee was not covered under the statute. The court cited and afforded great weight to Larson's treatise on Workmen's Compensation (Desk Ed. 1977), from which these factors are derived. The following passage is cited from Volume 1A, Section 22 of that treatise:
Recreational or social activities are within the course of employment when
(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.
*220 Our assessment of the question of coverage under the Louisiana compensation statute must be accomplished in light of the jurisprudence of this state. Furthermore, an analysis of the "in the course of" requirement if oversimplified by its relegation to several boilerplate questions. The determination of coverage is a subjective one in that each case must be decided from all of its particular facts. Lisonbee v. Chicago Mill and Lumber Company, 278 So.2d 5 (La.1973).
The terms arising out of, and in the course of are not synonymous. The former suggests an inquiry into the character or origin of the risk, while the latter brings into focus the time and place relationship between the risk and the employment. The two requirements cannot, however, be considered in isolation from each other. A strong showing by the claimant with reference to the arise-out-of requirement may compensate for a relatively weak showing on the during-course-of requirement, or vice versa. As a corollary it follows that whenever the showing with respect to both requirements is relatively weak a denial of compensation is indicated. Malone, Louisiana Workmen's Compensation, §§ 162, 192.
The chief question presented is whether the trial court was clearly wrong in its factual finding, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), and/or erroneous in its application of the law.
The "arising out of" requirement we deem to have been satisfied to a great degree particularly in light of two factors which were considered by the Court of Appeal[2] but concerning which the trial court and this Court, now, take a contrary view. The first of these is the extent to which employee attendance at the swimming party was mandatory. While it is true that Mrs. Huseth told the group that their presence at the pond was not required and while it is also true that two of the boys declined to ride with Mrs. Huseth to the site of the party, choosing later to provide their own transportation, the probabilities are that the boys were greatly influenced by the suggestion of their leader that they go swimming. Especially is this true in light of the boys' knowledge that they were to receive full pay for the entire day. It is quite likely that the group was under the impression that their time was still not their own and that they were expected to attend.
Furthermore, in our view, a supervisor's "suggestion" that her charges do or not do a certain thing takes on a much greater air of compulsion when such a suggestion is directed to adolescents, as is the case here, then when made to adults. As Larson states at Section 22.22, page 5-84:
Compulsion need not take the form of a direct order, if the employee is made to understand that he is to take part in the affair.
The fact that Mrs. Huseth in no way intentionally pressured the youngsters into attending the party does not mean that the boys indeed felt no compulsion. The trial court's inferential determination that the youngsters felt some degree of compulsion, or that they were required to attend, was not clearly wrong.
The next factor which is significant in our assessment of whether Jackson's death arose out of his employment is the degree to which the employer's purpose was served by the activity which gave rise to the injury.
It is true that there was probably no physical benefit to the employer as a result of the swimming party. No trash was collected and no grass was cut during that time. However, because of the somewhat unusual nature of the employer/employee relationship in this case, we do not believe that the employer's only purpose in the work program was procurement of physical benefits. Rather, there is evidence in the record that among the goals of the federally *221 funded, "make-work" CETA program are the advantages to be derived from community goodwill, the instillment of discipline, and improved relations between the underadvantaged youth and the institution of government. This is obvious from the trial testimony that it was a very common occurrence for the supervisor to run out of things for the boys to do. Indeed, the lax format of the program suggests that its main purpose was to provide summer supervision to the youngsters while exposing them to authority in a job situation. As the trial court accurately observed, "... the employer's business seems to be almost as much furthered by this supervised activity [the swimming party] as ... sitting under the tree ... on some hot afternoon when they had completely run out of things to do." Certainly, if the Council's only interest was the cutting of grass and the collection of trash, the hiring of unemployed adults instead of the CETA mandated youngsters would have better served their ends. Moreover, if the Council chooses to administer an employment program which entails the supervision of young boys and in the course of that program injury occurs, the injury arose out of the employment.
As previously mentioned, the "in the course of" requirement refers generally to the time and place of the accident as it relates to that of the regular employment. In this case, Jackson's death occurred during regular working hours at which time full wages were being paid. Also important is the fact that the accident cannot be considered to have taken place outside the premises of employment since there were no set confines for the youngsters' work activities. The testimony was that the boys usually met with their supervisor each morning at a predetermined place, but after that meeting, the group went to wherever the work presented itself. Furthermore, as stated by Larson at Section 22.23, page 5-91 of Workmen's Compensation (Desk Ed. 1977):
In one sense, when the employer plans a regular outing and urges his employees to go to a specified place for the purpose, continuing their pay while there, it may be said that both the time and space limits of the employment are expanded to picnic day at the picnic grounds.
In summary, after a consideration of all the facts of this case, we are of the opinion that Jackson's death bore sufficient connexity to his employment in terms of origin and in terms of time and place to have arisen from and to have occurred in the course of that employment. We cannot say that the trial court was clearly wrong in its finding, nor erroneous in its judgment. Therefore, the judgment of the Court of Appeal will be reversed and the decision of the trial judge as to the finding of coverage reinstated.
In deciding the basic issue of coverage under the statute, the trial court awarded the decedent's parents only the $1,378.00 funeral expenses and declined to award them dependency benefits. The trial court also refused plaintiffs' demand for penalties and attorney fees.[3] The Court of Appeal, concluding that there was no coverage, did not reach the issues of dependency benefits and penalties and attorney fees, which issues we now decide.
The trial judge, in his consideration of the issue of dependency, found as a matter of fact that Mr. and Mrs. Jackson were not dependent on the decedent "... before, during or since his tragic death ..." and had no reasonable expectation of support from him.
The trial court found that Jackson was not at the time of his death contributing to the support of his family[4] and, furthermore, that he wasn't likely to have done so in the *222 future. The trial judge's decision is therefore obviously one based on his findings of fact, and he so stated. And upon our review of the record, we find nothing to suggest that this determination was in error.
The same can be said of the court's refusal to award attorney fees. Because of the uncommon nature of the employment in this case and because of the unusual circumstances surrounding the death of Joe Jackson, the defendants cannot be said to have arbitrarily or capriciously withheld the funeral expenses.

Decree
For the reasons stated above, the judgment of the Court of Appeal is reversed and the decision of the trial court is reinstated in all respects.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.
BLANCHE and MARCUS, JJ., dissent and assign reasons.
BLANCHE, Justice (dissenting).
I respectfully dissent. The opinion of the court of appeal is correct.
MARCUS, Justice (dissenting).
I do not consider that decedent's drowning arose out of and in the course of his employment. Hence, his employer is not obligated to pay compensation. Accordingly, I respectfully dissent.
NOTES
[1] The Coordinating and Development Council of Northwest Louisiana is comprised of ten parishes in that area of the state and was formed to administer various state and federally funded projects.
[2] While Larson's treatise is not controlling, many of its suggested inquiries are germane to the question at bar.
[3] Either the employer or the insurer or both are subject to a penalty of 12% of the total amount of the claim or loss for failure to pay within sixty days after notice of proof of loss when such failure is found to be "arbitrary, capricious, or without probable cause." R.S. 22:658, R.S. 23:1201.2.
[4] After hearing evidence of retail purchases made by the decedent, the court observed that Jackson was spending his summer wages almost exclusively on clothes for himself.