733 So.2d 123 (1999)
LEXINGTON HOUSE, Plaintiff Appellee,
v.
Kimberly GLEASON, Defendant Appellant.
No. 98-1818.
Court of Appeal of Louisiana, Third Circuit.
March 31, 1999.
Writ Denied June 25, 1999.
Janice Bertucci Unland, Covington, for Lexington House.
Mark Alan Watson, Covington, for Kimberly H. Gleason.
*124 Before THIBODEAUX, PETERS, and PICKETT, Judges.
PETERS, J.
Lexington House Nursing Home (Lexington House) filed the instant motion for summary judgment, asserting that Kimberly Gleason, its former director of nurses, was not in the course and scope of her employment at the time she sustained injuries in a softball tournament in which Lexington House participated. Mrs. Gleason also filed a motion for summary judgment, asserting that her injuries did in fact arise in the course and scope of her employment. Evidence was presented in support of the motions for summary judgment through deposition testimony, affidavits, and other documents. The workers' compensation judge granted Lexington House's motion and denied Mrs. Gleason's motion, finding that Mrs. Gleason was not in the course and scope of her employment at the time of her accident and injury. Mrs. Gleason appeals.
The softball tournament was held on Saturday, September 11, 1993, as the first annual softball tournament hosted by the Region IV Patient Activity Directors Association (PAD) for the Louisiana Nursing Home Association. There are seven PAD regions in Louisiana, with Region IV being comprised of activity directors from nursing homes located in the parishes of Rapides, Avoyelles, Winn, Grant, LaSalle, and/or Natchitoches. PAD is an organization independent from the nursing homes located in its regions. In 1993, Lexington House's activity director was a member of the Region IV PAD and was responsible for coordinating a softball team for Lexington House to play in the tournament.
PAD's purpose for holding the softball tournament was to "have a good time," boost morale, facilitate public relations for PAD and its members, and generate funds to support PAD's objectives. Lexington House, along with six or seven other nursing homes, entered a team in the 1993 softball tournament at the cost of $25.00 for the entry fee. Each team was to be comprised of only employees from the respective nursing homes, although nursing home residents were brought out to watch the tournament. However, Lexington House was not able to field a full team on the day of the tournament, and nonemployees were allowed to participate on its team, including Mrs. Gleason's husband. Mrs. Gleason sustained an injury to her left wrist during the tournament when she ran into a player from another team who was blocking home plate.
Under La.R.S. 23:1031(A), an employer is required to pay workers' compensation to an employee not otherwise eliminated from receiving benefits if the employee sustains an injury by accident "arising out of and in the course of his employment...." The "arising out of" and the "in the course of" elements are not synonymous but cannot be considered in isolation from each other. Jackson v. American Ins. Co., 404 So.2d 218 (La. 1981). A strong showing with reference to one of these elements may compensate for a relatively weak showing with reference to the other. Id. In Jackson, the court found that the "arising out of" element in the case before it was satisfied by two factors: the extent to which employee attendance at the event was mandatory and the degree to which the employer's purpose was served by the activity which gave rise to the injury. The court also explained that the "in the course of" element generally relates to the time and place of the accident as it relates to that of the regular employment.
Malveaux v. American Manufacturing Co., 597 So.2d 1192 (La.App. 3 Cir.1992) (citing Jackson, 404 So.2d 218), involved the issue of whether the trial court erred in granting a motion for summary judgment on finding that the plaintiff-employee was not in the course and scope of his employment when he was injured while playing on a company-sponsored softball team. We instructed in Malveaux: "First *125 consider the extent to which employee attendance is expected or mandatory. Then look at the benefit the employer received from the activity which gave rise to the injury. Finally, consider the time and place relationship between the risk of the injury and the employment." Id. at 1194. In that case, the employee admitted that participation was voluntary. Additionally, the employees were not paid while playing on the team, and if the work schedule conflicted with the softball, the work schedule received priority. Also, the softball tournament was not organized for advertising purposes but at the request of employees, and there was no evidence that the employer received any benefit from the activity. Finally, the games were not played on company premises. Therefore, the third circuit affirmed the summary judgment.
In the instant case, unlike the employee in Malveaux, Mrs. Gleason contends that participation in the softball tournament was mandatory for her because of her position as director of nurses. Mrs. Gleason testified in deposition that she did not sign up to play on the Lexington House team. She also testified that Robert Burns, her direct supervisor and the administrator of the nursing home, had two conversations with her about the softball tournament. According to Mrs. Gleason, in the first conversation, she told Mr. Burns that her husband was working nights and that she was not playing. She testified that Mr. Burns said, "Oh, yeah, come on. You know, you're gonna play." She also testified that he told her that she was expected to be there, but she testified that she did not take him seriously. However, according to Mrs. Gleason, about a week or so before the tournament, Mr. Burns indicated that she was going to play in the tournament. Mrs. Gleason testified that she told him that she was not interested in playing and that he said, "You're the Director of Nurses, you're expected to be there." Mrs. Gleason stated: "I had said on several occasions I wasn't going to, I did not voluntarily sign up, and I had protested, so when someone tells me I'm expected to be there I took it as expected to be there." However, she testified that Mr. Burns did not say that something negative would happen to her if she did not play; rather, she just understood from his tone and his words that he expected her to be there. Mrs. Gleason testified to discussing with a few of her coworkers her dissatisfaction over having to play in the tournament.
On the other hand, Pattie DeSoto, Lexington House's activity director at the time of the tournament, testified in deposition that she communicated to the Lexington House employees that their participation was voluntary. Mr. Burns stated in his affidavit that no Lexington House employees were ever coerced in any way to participate in the tournament and that there was no pressure or expectation from the administration that Mrs. Gleason or any other employee play in the tournament. He stated that it was his understanding that participation in the softball game was to be strictly voluntary. Further, Megan Thiels, an employee of Lexington House at the time, stated in affidavit that she was never pressured in any way to participate in the tournament and that she understood at all times that her participation in the tournament was strictly voluntary. Carmela Mathews, the assistant director of nurses for Lexington House at the time, stated in affidavit that participation on the softball team was strictly voluntary and that she never felt any pressure to play in the tournament. She also attested that she worked closely with Mrs. Gleason prior to the tournament and that Mrs. Gleason "was very excited about participating in the game and never said or even implied that she felt obligated to participate." Lexington House also presented the affidavits of three other employees who stated that they were told that participation in the tournament was strictly voluntary, that they were not coerced by anyone from administration to participate on the team, and that they chose not to participate. *126 Ms. DeSoto explained that nursing home participation in the tournament was discretionary and that not all of the nursing homes participated. Interestingly, Mrs. Gleason admitted that she called her husband to play in the tournament probably because they did not have enough people, allowing an inference to be drawn that Mrs. Gleason preferred to play in the tournament rather than forfeit the game.
Importantly, the instant case is before us in the posture of a summary judgment, which must be rendered only when there is no genuine issue of material fact and the mover is entitled to the judgment as a matter of law. See La.Code Civ.P. art. 966(B). As a matter of law, the court in Jackson, 404 So.2d 218, explained that compulsion need not take the form of a direct order if the employee is made to understand that she is to take part in the activity. In the instant case, there is conflicting evidence as to whether Mrs. Gleason was under compulsion to participate in the softball tournament. The workers' compensation judge found that Mrs. Gleason's testimony was "certainly self-serving and ... in direct conflict" with other deposition testimony and affidavits. The workers' compensation judge obviously discounted Mrs. Gleason's testimony.
However, "[i]ssues of credibility have no place in summary judgment procedure." Carriere v. State, Dep't of Soc. Servs., 97-1305, p. 4 (La.App. 3 Cir. 3/6/98); 708 So.2d 822, 824, writ denied, 98-0958 (La.5/29/98); 720 So.2d 335. It is not the court's function on a motion for summary judgment to determine or even inquire into the merits of the issues presented. Succession of Harvey v. Dietzen, 97-2815 (La.App. 4 Cir. 6/24/98); 716 So.2d 911, writ denied, 98-2025 (La.11/6/98); 728 So.2d 391. While deposition testimony may be used to support or oppose a motion for summary judgment, it may not be weighed. Id. We find that the workers' compensation judge erred in making credibility calls and weighing the evidence on the motions for summary judgment.
In so holding, we reject Lexington House's argument that Mrs. Gleason's "self-serving" affidavit which contained hearsay was not competent evidence to defeat its motion for summary judgment. Specifically, Lexington House alleges that Mrs. Gleason's affidavit contains hearsay regarding her statement that Mr. Burns advised her that she was expected to play in the tournament. We note that Mrs. Gleason also presented the allegedly "hearsay" evidence in her deposition testimony and that Lexington House did not enter any objections for the record in this regard. In any event, under La.Code Evid. art. 801(D)(3)(a), a statement is not hearsay if it is offered against a party, is a statement by an agent or employee of the party concerning a matter within the scope of his agency or employment, and is made during the existence of the relationship. Even so, this court in Wynder v. Royal Ford Lincoln Mercury, Inc., 98-616 (La.App. 3 Cir. 10/28/98); 721 So.2d 1001, in rejecting an argument that an affidavit should have been disregarded because it contained hearsay, explained that in a workers' compensation case, subject to discretionary limits, the mere fact that evidence is hearsay is not a sufficient ground to exclude it.
Further, we find a genuine issue of material fact concerning the second Jackson factor, i.e., whether the employer's purpose was served by the activity which gave rise to the injury. The evidence does reveal that PAD did not give any of the nursing homes any money for participating in the tournament. In fact, the $369.12 generated from the tournament went directly to PAD and was used to further its objectives. Thus, Lexington House received no direct monetary benefit from the tournament. However, we find that in this case, the issue of employer benefit is so intertwined with the issue of the voluntariness of the employee's participation as to render it an issue of material fact, for if *127 the employer required employee participation, the inference could be drawn that there would have been some benefit to the employer. In fact, Mrs. Gleason indicated in her deposition testimony that her participation on the softball team would have been part of her job duties because of the public relations benefits. She stated: "[Mr. Burns] liked me to mingle with the families, the residents, the other directors, the other administrators." She also testified that he had told her before that he wanted her to mingle with other nursing home people, although he did not tell her this in the conversation he allegedly had with her wherein he informed her she was expected to be at the tournament. According to Mrs. Gleason's testimony, the purpose of the mingling was to find out what was going on in the other nursing homes. Additionally, while PAD and not Lexington House benefitted monetarily from the tournament, according to Ms. DeSoto, her membership in PAD helped her to become more involved, to learn about other activities in which she could involve her residents, and to serve her residents better, which meant that she was doing a better job for her employer, Lexington House. Also, Ms. DeSoto testified that Lexington House brought some of its residents to the tournament for their enjoyment, which would have been an outing for them. Thus, this is a genuine issue of material fact.
Under the third inquiry, or the time-and-place inquiry, the evidence is clear that the softball tournament did not occur on or near Lexington House property. Further, any employee who played on the Lexington House team was required to be off duty at game time. Additionally, the employees who participated in the tournament were not paid for their participation, and Mrs. Gleason admitted that she was not paid for the day of the tournament. While there is no genuine issue of material fact as to this factor, it must be assessed in conjunction with the other factors, rendering this particular case an inappropriate one for summary judgment.

DISPOSITION
For the foregoing reasons, we reverse the workers' compensation judge's judgment insofar as it granted Lexington House's motion for summary judgment. We affirm the judgment insofar as it denied Mrs. Gleason's motion for summary judgment. We remand the case for further proceedings consistent with this opinion and assess one-half of the costs of this appeal to Lexington House and one-half to Mrs. Gleason.
REVERSED IN PART; AFFIRMED IN PART.
PICKETT, J., CONCURS IN THE RESULT.