817 So.2d 313 (2002)
Marc J. WINKLER
v.
WADLEIGH OFFSHORE, INC.
No. 2001-CA-1833.
Court of Appeal of Louisiana, Fourth Circuit.
April 24, 2002.
*315 Ernest J. Bauer, Jr., Joseph F. LaHatte, Jr., Roderick Alvendia, Law Offices of Joseph F. LaHatte, Jr., New Orleans, LA, for Plaintiff/Appellee.
S. Daniel Meeks, John B. Esnard, III, Reich, Meeks & Treadaway, L.L.C., Metairie, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr.).
TOBIAS, Judge.
The defendant, Wadleigh Offshore, Inc. ("Wadleigh"), appeals the judgment of the Office of Workers' Compensation ("OWC") in favor of the plaintiff, Mark Winkler, awarding him temporary total disability benefits from 5 July 1998 through 19 October 1998. For the following reasons, we reverse the judgment.
Mr. Winkler was employed by Wadleigh as a crane mechanic and, in March 1998, was asked to go to Doha, Qatar, to perform third-party inspections of cranes for Noble International ("Noble"). Wadleigh and Noble had entered a contract whereby a Wadleigh employee would perform annual or quarterly inspections of Noble's cranes in Qatar. While in Qatar, the plaintiff received his work orders directly from James Shetter and William Yester, Noble's administrative and financial officer and drilling superintendent, respectively. Noble furnished Mr. Winkler with room, board, and transportation. Mr. Winkler performed most of his duties offshore, where he worked twelve-hour days on the cranes. While on shore, he inspected repaired crane components at a service facility in Doha.
On 3 July 1998, Mr. Winkler learned from Mr. Shetter that Randy Porterfield, area manager for Reed Tool Company, was hosting a Fourth of July party the next day.[1] Neither Noble nor Wadleigh contributed anything towards the cost of the party. Mr. Winkler arrived at the party at approximately 4:00 p. m. and left the party between 2:30 a. m. and 3:00 a. m. on 5 July 1998. It is undisputed that Mr. Winkler consumed a number of alcoholic beverages while at the party, although the he contends that he was not impaired when he left Mr. Porterfield's residence. On the way back to his hotel, Mr. Winkler was involved in a single-car accident in which he was injured.[2]
Wadleigh refused to pay workers' compensation benefits on the basis that Mr. Winkler did not sustain a compensable injury during the course and scope of his *316 employment. In addition, it alleged that Mr. Winkler had forfeited any right to benefits because he was intoxicated at the time of the accident. Mr. Winkler filed a disputed claim for compensation, which was litigated on 8 September 1999.
After considering the evidence, the OWC judge rendered a judgment in favor of the claimant on 8 October 1999, awarding him temporary total disability benefits and medical benefits, and issued written reasons on 21 October 1999. Wadleigh timely appealed from the judgment. However, the judgment was not final because it did not adjudicate the duration of temporary total disability benefits. Thus, the appeal was dismissed without prejudice and the judgment of 8 October 1999 was vacated.[3]
On 6 June 2001, the OWC judge rendered judgment, holding that Mr. Winkler was entitled to temporary total disability benefits from 5 July 1998 through 19 October 1998. The OWC did not issue new reasons for judgment.
In the earlier reasons for judgment, the judge briefly reviewed the testimony and found that Mr. Winkler was in the course and scope of his employment with Wadleigh and Noble on 4 July 1998, and that intoxication was not proven by the defendant. The judge also found that the defendant had been arbitrary and capricious in its refusal to pay benefits and awarded Mr. Winkler penalties in the amount of $2,000.00 and attorney fees in the amount of $3,000.00.
In its appeal, Wadleigh assigns three errors. First, it contends that the OWC judge erred in finding that Mr. Winkler was in the course and scope of his employment at the time of the accident. Second, it argues that the judge erred in finding that Wadleigh did not prove the defense of intoxication. Finally, Wadleigh contends that the plaintiff did not prove by clear and convincing evidence that he was temporarily totally disabled as a result of the accident.
The determination of the course and scope issue is a mixed question of law and fact. Wright v. Skate Country, Inc., 98-0217 (La.App. 4 Cir. 5/12/99), 734 So.2d 874. It is well-settled that a court of appeal may not set aside a trial court's findings of fact in the absence of "manifest error" or unless they are "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989).[4] On the other hand, appellate review of a question of law is simply a decision as to whether the trial court's decision is legally correct or incorrect. Miller v. Southern Baptist Hosp., XXXX-XXXX (La. App. 4 Cir. 11/21/01), 806 So.2d 10. If the trial court's decision is based on its erroneous application of law, rather than on the valid exercise of discretion, its decision is not entitled to deference by the reviewing court. Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983). When an appellate court finds that a reversible error of law is made in the lower court, it must redetermine the facts de novo from the entire record and render a judgment on the merits. Lasha v. Olin Corp., 625 So.2d 1002 (La.1993).
We find that the OWC judge committed an error of law by incorrectly considering the applicable law concerning course and scope of employment. Accordingly, a de *317 novo review of the record is necessary here.
Before reviewing the evidence, we set forth the controlling principles of law on course and scope. The extent of an employer's liability for paying workers' compensation benefits to an injured employee is controlled by La. R.S. 23:1031(A), which provides as follows:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated. (Emphasis added.)
Generally, two elements must be proven to show that an employee was within the course and scope of his employment: (1) that the injury suffered by the employee arose out of the employment ("the arising-out-of requirement"), and (2) that the employee suffered the injury during the course of his employment ("the during-course-of requirement"). See Bolton v. Tulane Univ. of Louisiana, 96-1246 (La.App. 4 Cir. 1/29/97), 692 So.2d 1113 (subsequent history omitted).
The arising-out-of requirement is designed to separate accidents that may be attributed to employment risks, which are compensable, from accidents that may be attributed only to personal risks. Mundy v. Department of Health and Human Resources, 593 So.2d 346, 349 (La.1992). A determination of whether an accident arises out of the employment requires that a court consider only the following questions:
(1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?
Bolton, 96-1246 at p. 13, 692 So.2d at 1121.
In Fasullo v. Finley, 2000-2659, pp. 4-5 (La.App. 4 Cir. 2/21/01), 782 So.2d 76, 80, we identified various factors to consider when determining whether an employee's conduct was "employment rooted." These factors include the payment of wages by the employer, the employer's power of control, the employee's duty to perform the particular act, the time, place, and purpose of the act in relation to service of the employer, the relationship between the employee's act and the employer's business, the benefits received by the employer from the act, the motivation of the employee for performing the act, and the reasonable expectation of the employer that the employee would perform the act.
Jurisprudence has also addressed the issue of social activities in the context of course and scope. In Jackson v. American Insurance Co., 404 So.2d 218, 219 (La.1981), the Supreme Court set forth the following factors for determining whether recreational or social activities are within the course of employment:
(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.
*318 In Jackson, a sixteen-year-old boy employed in a government sponsored summer youth program drowned while attending a swimming party sponsored by his employer. Although attendance at the swimming party was not mandatory, the Court found that the accident arose out of the plaintiff's employment. In so doing, the Court assigned great weight to two factors. First, the Court noted that, although attendance was not mandatory, some degree of expectation (or compulsion) was present that the youths attend the swimming party. Second, the Court noted that the activity in question (swimming party) furthered the goals of the summer program which included, among other things, establishment of community goodwill, instillment of discipline in the involved youths, and improvement of relations between disadvantaged youths and the government. Id. at 220-21.
In the matter at bar, Mr. Winkler testified that he understood that people attending the party would be Noble customers and other businessmen in the oil and service industry. When he told George Tolme, Wadleigh's engineering vice president, about the party, Mr. Winkler "felt" like Mr. Tolme wanted him at the party, although personally, the plaintiff did not want to attend. He also "felt" that Mr. Shetter and Charlie Ester, a Noble superintendent, wanted him to attend the party for "P. R." reasons. He stated that when Noble employees are invited to a function, "they" expect everyone to attend. Although he was not in sales for Wadleigh, Mr. Winkler believed that there would be people at the party to whom he could have made a sale that evening.
Upon arriving at the party, Mr. Winkler admits that he drank alcohol, but not to the point of intoxication. He claims that he and Mr. Shetter "talked business" to a man from Mertz Oil while at the party. He also testified that his presence at the party improved both Wadleigh's and Noble's relationship with companies in the Middle East.
Concerning his work hours, Mr. Winkler testified that he was on call twenty-four hours a day, but was only paid for the actual time worked. He stated that had there been a crane emergency on one of the Noble sites that night, he would have been required to work. Although Noble had a policy that you could not work if intoxicated, the plaintiff testified that Noble overlooked that policy in times of emergency.
Mr. Winkler stressed that he was not intoxicated when he left the party early the next morning. He claims that the accident occurred while he tried to negotiate a turn in a traffic circle in a poorly lit area of the road. Immediately after the accident, he called Mr. Shetter; when he made the call, he was badly shaken.[5] The police arrived on the scene and took him to the hospital for treatment. He was not questioned for driving under the influence and did not receive a ticket for the accident. Mr. Winkler returned immediately to the United States and received medical treatment for an injury to his foot.
On the other hand, no one from either Noble or Wadleigh testified that Wadleigh knew or approved of the plaintiff attending a party where alcohol would be served. Both Messrs. Shetter and Yester testified that the party was held after business hours and Mr. Winkler was neither paid nor expected to attend.[6] Both testified *319 that it was not mandatory for the plaintiff to attend.
According to Mr. Porterfield, the host of the party, neither Wadleigh nor Noble contributed anything to the cost of the party. He stated that the party served no business purpose and was merely a social, informal gathering; most of the people there did not work in the oil and gas exploration and production industry. Most of those attending brought their own alcohol and food to contribute to the party.
Mr. Shetter also testified that the party served no business purpose and denied that he and the plaintiff talked business to a potential customer. In fact, Mr. Yester testified that business was not discussed that evening and that no potential Wadleigh clients were at the party. Despite Mr. Winkler's claim that he discussed business at the party, he was unable to name any potential clients to whom he spoke.
Everyone who testified agreed that Mr. Winkler drank the entire evening. Mr. Porterfield estimated that the plaintiff drank eight to ten margaritas while he was present, while Mr. Shetter testified that Mr. Winkler always had a beer in his hand. Mr. Porterfield stated that the plaintiff drank three beers during the last hour he was at the party. When Mr. Yester left the party at about 10:00 p. m., the plaintiff appeared intoxicated. Mr. Yester related that the plaintiff was slurring his speech and called a Noble customer "sweetheart," which he described as "unprofessional." Mr. Shetter, who left the party between 11:00 p.m. and 11:30 p. m., also testified that Mr. Winkler appeared inebriated. Although Mr. Porterfield did not recall the plaintiff being loud and obnoxious, Mr. Shetter testified that Mr. Porterfield asked him to calm the plaintiff down.
Mr. Wadleigh testified that Mr. Winkler was a crane inspector and mechanic and not a salesman; he was not expected to make sales for Wadleigh while in Qatar. Further, the scope of the contract between Wadleigh and Noble did not require Mr. Winkler to be on call twenty-four hours a day or perform emergency crane repairs.
Applying the factors outlined by the Supreme Court in Jackson, supra, we find that the OWC judge erred as a matter of law in finding that Mr. Winkler's presence at the Fourth of July party occurred during the course and scope of his employment with Wadleigh. First, nothing in the record shows that the party occurred as a regular incident of the plaintiff's employment. The record indicates that Mr. Winkler was not paid for the hours he spent at the party, and he was not on call during that time to handle emergencies. Second, other than the plaintiff's own testimony, no evidence supports his contention that his presence at the party was either expressly or impliedly required by either Noble and/or Wadleigh. Finally, there is not a scintilla of evidence that either Noble and/or Wadleigh derived any "substantial direct benefit" whatsoever from Mr. Winkler's attendance.[7]
Turning to the Fasullo factors, we find further support that the accident did not occur during the course and scope of the plaintiff's employment. Wadleigh was thousands of miles away and was not in *320 control of the plaintiffs actions. No evidence exists that Mr. Winkler's duties included attending parties; this conclusion is supported by the fact that Mr. Winkler had not attended any other parties given in Qatar.[8] Attending the party did not serve Wadleigh; it was done while Mr. Winkler was off duty from his sole reason for being in Qatar-to perform third-party crane inspections. Wadleigh did not receive a benefit from Mr. Winkler's attendance at the party and the evidence conclusively establishes that neither Wadleigh nor Noble expected Mr. Winkler to attend. Finally, although Mr. Winkler testified that he wanted to help Wadleigh by attending the party, this claim is unsupported by his actions while at the party.
The only evidence in the record supporting Mr. Winkler's claim is his own uncorroborated, self-serving testimony. As in other civil actions, the plaintiff-worker in a compensation action has the burden of establishing a work-related accident by a preponderance of the evidence. Bruno v. Harbert Intern., Inc., 593 So.2d 357, 361 (La.1992). A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Id.; Malone and Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation, § 253 (2d Ed.1980). Corroboration of the worker's testimony may be provided by the testimony of fellow workers, spouses, or friends. Malone & Johnson, supra.
No witness corroborates Mr. Winkler's testimony that he was expected or required to attend the Fourth of July party or that his attendance benefited his employer. Considering the record as whole, we can only conclude that the Fourth of July party was nothing more than a purely social event that the plaintiff voluntarily chose to attend.
Because we find that the accident did not occur during the course and scope of the plaintiff's employment, we do not discuss Wadleigh's remaining assignments of error.
Accordingly, we reverse the judgment of the Office of Workers' Compensation. All costs of this appeal are assessed against the plaintiff.
REVERSED AND RENDERED.
ARMSTRONG, J., concurs.
I respectfully concur in the result. The plaintiff was not in the course and scope of his employment at the time of his injury.
NOTES
[1] Parties were held every two weeks to one month in the area; this was the first party Mr. Winkler attended since his arrival in Qatar almost four months earlier.
[2] At the time of the party, Mr. Winkler was driving a rental car given to him by Mr. Shetter. Mr. Winkler had requested his own transportation because he was on an "off period" and wanted to see the country. The car was provided by Noble as a courtesy. Normally Mr. Winkler traveled by taxicab while on shore.
[3] See Winkler v. Wadleigh Offshore, Inc., XXXX-XXXX (La.App. 4 Cir. 1/24/01), 781 So.2d 588.
[4] However, where the trial court's reasons do not articulate the theory or evidentiary facts upon which its conclusions are based, we are not required to give its findings the usual deference attributed to the decisions of the triers of fact. Bloxom v. Bloxom, 512 So.2d 839, 843 (La.1987).
[5] Mr. Shetter, however, testified that when the plaintiff called him, his speech was "slurred and broken," clearly sounding intoxicated. In fact, Mr. Shetter stated that he had difficulty understanding what the plaintiff said during that telephone call.
[6] Both Messrs. Shetter and Yester contradicted the plaintiff's testimony that he was on call twenty-four hours a day. Mr. Yester testified that there was no reason for Mr. Winkler to be called to a drilling rig to repair a crane; Noble had mechanics on site to perform such duties. In addition, the contract between Noble and Wadleigh did not call for the plaintiff to perform crane repairs.
[7] In fact, the testimony indicates that the plaintiff's unprofessional behavior at the party was more prejudicial than beneficial to Wadleigh's good will in the Qatar business community.
[8] Although not briefed by the parties, the plaintiff argued before the court that the "Comfort Doctrine" recognizes that an employee is entitled to some reasonable recreation as part of his or her employer's business of having to remain out-of-town for extended periods of time. See generally Blakeway v. Lefebure Corp., 393 So.2d 928 (La.App. 4 Cir. 1981). Blakeway holds that even if an employee is not paid for his or her non-working hours, an accident which occurs during such `time may be considered to be in the course and scope if is arises out of the necessity which brought the employee to the out-of-town location. Id. at 929. However, the instant matter, it has been established that Mr. Winkler was not at the party out of necessity or as a part of his employer's business. Therefore, we find the "Comfort Doctrine" inapplicable to the case before us.