997 So.2d 670 (2008)
Augustine Expensis OBEIN (Deceased), Plaintiff-Appellant
v.
MITCHAM PEACH FARMS, LLC, Defendant-Appellee.
Nos. 43,637-WCA, 43,638-WCA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2008.
*671 John S. Stephens, for Plaintiffs-Appellants Augustine Obein and Simone Obein.
Snellings, Breard, Sartor, Inabnett & Trascher, LLP, by Donald J. Anzelmo, Monroe, for Defendants-Appellees Mitcham Peach Farms, LLC and Luba.
Before STEWART, GASKINS and LOLLEY, JJ.
GASKINS, J.
Plaintiffs, Simone Obein and Lisa Obein, as heirs of Augustine Expensis Obein, deceased, appeal the dismissal of their claims for workers' compensation benefits from Defendant, Mitcham Peach Farms, LLC. The workers' compensation judge ("WCJ") granted Defendant's Motion for Summary Judgment and dismissed Plaintiffs' claims. For the reasons stated herein, we affirm the decision of the trial court.

FACTS
Plaintiffs, Lisa Obein and Simone Obein, are the wife and daughter, respectively, of Augustine Obein. Mr. Obein worked full-time for Defendant performing manual labor. Steven Morton, the production and field employee manager, was Mr. Obein's supervisor. Mr. Morton described Mr. Obein as his right-hand man and friend for 18 years. Mr. Obein's duties included harvesting peaches, pruning, teaching new employees how to prune and supervising a crew as it thinned the peach trees. On July 28, 2005, his particular task was to pick peaches. That day, the workers congregated at the processing plant and walked to the orchard, about 125 yards away. Due to an early rain, the workday ended at 9:13 a.m.
In his deposition, Mr. Morton outlined the events of that morning:
Attorney: Q. Okay. And you said that at, I believe, 9:13 you said, "We've done all we can. Let's call it a day"?
Morton: A. We've hauledWe've done all we needed to do, and they were wanting to call a day because they were soaking wet.
Attorney: Q. And when you said that, what did the seventeen or sixteen or seventeen people working under you do?
Morton: A. All butand I don't remember the exact numberall but about five or six of them went on back up to the processing plant. Augustine never got onto the trailer, which I was going to walk in anyway and he probably was, also. Anyway, he just looked at me and said, "Steve, I want to go swimming" because these guys had been goating [sic] him and daring him forever and he's been talking about, you know, how good he was. And he just said he wanted to do it, *672 and I said, "Well, you know, we're off the clock." I said, "If y'all want to do it, fine." He assured me he could swim that pond.
Attorney: Q. And where was the pond located from where you all were picking?
Morton: A. Thirty yards.
Attorney: Q. How big a pond is that?
Morton: A. It's not even as big as this building. I mean, it'sit's not large at all. It's probably, if I had to say, sixty yards wide and not much longer than that.
Attorney: Q. Okay. So he would have had to walk from the buildingI mean, from the orchard where you were picking to the pond, which was about thirty yards?
Morton: A. Correct.
Attorney: Q. And did you go with him?
Morton: A. I did.
Attorney: Q. And after walking from where you had been working down to the pond, what happened then?
Morton: A. I backed off to the edge of the peach trees, and I let them continue with their banter and fun making. And Augustine came over and gave me a large sum of money to hold onto himhold on for him. ThereI made him take his boots off. He was going to do it with his boots on. I know. You don't have to look at me like that. I know. I put my hands on his shoulders and I said, "Augustine, are youdo you know for a fact you can do this?" and hestandard answer, "No worry, Steve. I got it." Well, he didn't get it. Anyway, there wasthat was it. After that, it was justit was them and me watching.
Attorney: Q. Had he ever swam in that pond before, to your knowledge?
Morton: A. No. No.
Attorney: Q. Did any of them swim in that pond?
Morton: A. Only one man that helped Joe Mitcham work on some irrigation equipment before, and thatwell, I say "him," Joe Mitcham, myself, and Mr. Mitcham, Sr., and one other man, the James Earl Smith, Sr., we got in the pond working before. Nobody else.
Unfortunately, Mr. Obein drowned in the pond in his attempt to swim. The police report confirms that Mr. Morton called for emergency help at 9:21 a.m.
Plaintiffs filed for workers' compensation benefits arguing that Mr. Obein's death resulted from his employment with Defendant. Defendant filed a Motion for Summary Judgment, which the trial court granted. The WCJ found in her oral reasons that the swimming activity was not within the course and scope of Mr. Obein's employment because he had already clocked out and the activity was unrelated to his task of picking peaches. The WCJ further found that, even if he was considered to still be working, Mr. Obein had deviated from his employment. The workers' compensation court dismissed Plaintiffs' claims. This appeal ensued.

DISCUSSION
Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions *673 on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Mosley v. Temple Baptist Church of Ruston, Louisiana, Inc., 40,546 (La.App. 2d Cir.1/25/06), 920 So.2d 355. The party opposing summary judgment cannot rest on the mere allegations or denials in his pleadings, but must show that he has evidence which, if believed, could satisfy his evidentiary burden of proof at trial. If he has no such evidence, then there is no genuine issue of material fact, and the movant is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Williams v. Sustainable Forestry 2000, L.L.C., 42,895 (La.App. 2d Cir.1/9/08), 974 So.2d 178.
The Worker's Compensation Act is to be liberally construed in favor of protecting workers from the economic burden of work-related injuries. Harper v. Horseshose Casino, 41,470 (La.App. 2d Cir.10/19/06), 942 So.2d 589. Under the Act, an employer is responsible for compensation benefits to an employee only when the injury results from an accident "arising out of and in the course of his employment." La. R.S. 23:1031; McLin v. Industrial Specialty Contractors, Inc., 02-1539 (La.7/2/03), 851 So.2d 1135; Mundy v. Department of Health and Human Resources, 593 So.2d 346 (La.1992).
The principal criteria for determining course of employment are time, place and employment activity. An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during work hours, either on the employer's premises or at other places where employment activities take the employee. Mundy, supra. The requirement that an employee's injury "arise out of" the employment relates to the character or origin of the injury suffered by the employee and whether this injury was incidental to the employment. McLin, supra. The concepts of "in the course of" and "arising out of" are mutually interdependent in determining the relationship of the injury to the employment. Further, in a close case, a strong showing in one aspect can counterbalance a relatively weak showing in the other. Mundy, supra.
When considering whether injuries sustained in connection to social activities are compensable under workers' compensation, the Louisiana Supreme Court has set forth that social or recreational activities are within the course of employment when:
(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.
Jackson v. American Ins. Co., 404 So.2d 218 (La.1981). See also Winkler v. Wadleigh Offshore, Inc., 01-1833 (La.App. 4th Cir.4/24/02), 817 So.2d 313.
Courts have followed the guidance of Jackson, supra, as requiring three factors to be considered in determining whether an employer-sponsored recreational activity is work related. Lexington House v. Gleason, 98-1818 (La.App. 3rd Cir.3/31/99), 733 So.2d 123, writ denied, 99-1290 (La.6/25/99), 746 So.2d 603; Malveaux *674 v. American Manufacturing Co., 597 So.2d 1192 (La.App. 3rd Cir.1992). Courts consider the extent to which the employee attendance is expected or mandatory. Courts also consider the benefit the employer received from the activity. Finally, the courts consider the time and place relationship between the risk of the injury and the employment. Jackson, supra.
With these considerations in mind, we cannot say that the trial court erred in finding that Mr. Obein's drowning was not in the course of or did not arise out of his employment with Defendant. First, the impromptu swimming session was neither expected nor mandatory on the part of Defendant. Mr. Morton testified that several of the crew working that day skipped the swimming and did not remain at the pond. While we note that expectations and mandate need not be direct, Jackson, supra, nothing in the record supports a finding that Mr. Obein was somehow compelled by Defendant to engage in the swimming activity. In fact, Mr. Morton's response to Mr. Obein, that "Well, you know, we're off the clock. If y'all want to do it, fine," indicates that the choice to participate was strictly voluntary.
Next, we consider the benefit to Defendant from the spontaneous swimming. Courts consider social and recreational activities within the course of employment when the employer gains some significant benefit, such as boosting employee moral and camaraderie, providing an opportunity for management to socialize with their workforce, encouraging good working relationships or encouraging continued loyalty to the employer. Tuminello v. Willis Knighton Medical Center, 597 So.2d 1089 (La.App. 2d Cir.1992), writ denied, 600 So.2d 684 (La.1992); Hanks v. Grey Wolf Drilling Co., 574 So.2d 531 (La.App. 3rd Cir.1991), writ denied, 577 So.2d 32 (La.1991). In the case sub judice, there is no evidence that Defendant received any benefit from the swimming activity.
Finally, we consider the relationship between the swimming activity and the employment. The swimming occurred on Defendant's property, but that alone is an insufficient connection. Lee v. Union Carbide Corp., 506 So.2d 204 (La.App. 5th Cir.1987). In terms of temporal proximity to the employment, the swimming occurred directly after the day's work had ended. Mr. Morton testified that the day's work ended at 9:13 a.m., although he rounded it to 9:15 a.m. for the time sheet. The police report confirmed that the 911 call was received at 9:21 a.m. The record, however, is clear that work had been concluded and that Mr. Obein was aware he was on his own time. Further, swimming was completely unrelated to Mr. Obein's employment activities. See, for example, Walker v. Acadian Builders of Gonzales, Inc., 01-2534 (La.App. 1st Cir.11/8/02), 835 So.2d 827. His tasks involved caring for the trees and picking peaches. His work did not require him to go swimming for any reason. We cannot find, therefore, that Mr. Obein was in the course of his employment when he drowned or that the accident arose out of his employment.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court granting summary judgment in favor of Defendant, Mitcham Peach Farms, LLC, and dismissing the claims of Plaintiffs, Simone Obein and Lisa Obein. Costs of appeal are assigned to Plaintiffs.
AFFIRMED.
LOLLEY, J., concurs.