STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

08-429


JANET C. LEMOINE

VERSUS

TOWN OF SIMMESPORT


************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 02
PARISH OF RAPIDES, NO. 06-08811
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

************

MICHAEL G. SULLIVAN
JUDGE

************

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Billy Howard Ezell, Judges.


Cooks, J., dissents and assigns reasons.

AFFIRMED.

Jerold Edward Knoll
The Knoll Law Firm
Post Office Box 426
Marksville, Louisiana  71351
(318) 253-6200
Counsel for Plaintiff/Appellant:
        Janet C. Lemoine

Mark D. Boyer
Boyer & Hebert
1810 Florida Avenue, SW, Suite B
Denham Springs, Louisiana  70726
(225) 664-4335
Counsel for Defendant/Appellee:
        Town of Simmesport

**Joseph B. Stamey**
**Stamey & Miller**
**Post Office Drawer 1288**
**Natchitoches, Louisiana  71458-1288**
**(318) 352-4559**
**Counsel for Defendant/Appellee:**
       **Louisiana Municipal Risk Management Agency**

**SULLIVAN, Judge.**

Janet Lemoine appeals a judgment of the Office of Workers' Compensation (OWC) which dismissed her claims against the Town of Simmesport. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Ms. Lemoine was injured on October 6, 2006, while collecting money for the Simmesport Cares Program (the Cares Program) at a roadblock set up on Highway 1 in Simmesport, Louisiana. After suffering a seizure, she fell and hit her head on the highway. The fall caused permanent brain damage and left her in a semi-vegetative state, totally dependent upon others, and, according to the neurosurgeon who performed brain surgery on her, with no chance of full recovery. As a result of her injuries, Ms. Lemoine was interdicted and her daughter was appointed as her curatrix.[1]

On December 27, 2006, Ms. Lemoine filed a Disputed Claim for Compensation against the Town of Simmesport (the Town), her employer at the time of her injury. Risk Management, Inc. (Risk Management), as administrator of the Town's workers' compensation insurer, denied Ms. Lemoine's claim in a letter to the Mayor of Simmesport, James Fontenot, dated November 30, 2006, on the basis that her injury was not work related. The Town later filed an answer to the disputed claim denying that Ms. Lemoine was injured by an accident arising out of and in the course and scope of her employment.[2]

_____

[1]All of the pleadings in this matter by Ms. Lemoine have been filed on her behalf by her curatrix. For ease of discussion, we will refer to the pleadings as being filed by Ms. Lemoine.

[2]By way of an amended answer, the Town affirmatively pled the defense of intoxication, i.e., it claimed that Ms. Lemoine was intoxicated by alcohol and non-prescribed controlled substances at the time of her accident. Several weeks later, however, the Town filed a second amended answer removing the defense of intoxication by alcohol. Approximately one month thereafter, the Town

Several weeks before the originally scheduled trial, Risk Management discharged the Town's attorney of record and informed the Town that it would no longer provide the Town with coverage or a defense to Ms. Lemoine's lawsuit. As a result, the Town filed a third-party demand against Risk Management alleging that it was owed coverage and/or a defense to Ms. Lemoine's claims by virtue of the insurance contract between them.[3] Risk Management filed exceptions and an answer to the Town's third-party demand.

Ms. Lemoine filed a motion for summary judgment against the Town and Risk Management on the issues of whether she had suffered a work-related accident and whether the accident had occurred during the course and scope of her employment with the Town, thus entitling her to workers' compensation benefits, along with penalties, interest, and attorney fees. The Town opposed the motion. Following a hearing, the workers' compensation judge denied Ms. Lemoine's motion. Ms. Lemoine timely sought writs in this court. In a decision rendered on January 9, 2008, this court denied the writ *finding no error in the trial court's ruling*.[4]

Trial on the merits was held on January 10, 2008. At the close of the evidence, Risk Management moved for an involuntary dismissal. The workers' compensation judge granted the motion and dismissed Ms. Lemoine's claims against the Town with prejudice. The third-party demand filed by the Town against Risk Management was dismissed with prejudice as well.

---

filed a third amended answer removing the defense of intoxication by non-prescribed controlled substances.

[3]The Town later amended its third-party demand to change the name of the third-party defendant to Louisiana Municipal Risk Management Association. For ease of discussion, we will continue to refer to that entity as Risk Management.

[4]*See Lemoine v. Town of Simmesport,* an unpublished writ bearing docket number 08-28 (La.App. 3 Cir. 1/9/08).

Ms. Lemoine now appeals, assigning the following errors:

1. The Workers' Compensation Court committed an error of fact and law in holding that she was not within the course and scope of her employment with the Town of Simmesport at the time of her injury.

2. The Workers' Compensation Court committed an error of fact and law in holding that La.R.S. 33:404 and La.R.S. 33:321 do not vest authority in the Mayor of Simmesport to establish the Simmesport Cares Program on behalf of the Town of Simmesport.

**DISCUSSION**

The Louisiana Supreme Court set out the standard of review to be employed in workers' compensation cases in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (citations omitted):

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). A worker bringing a compensation action against her employer bears the burden of proving, as a threshold requirement, that she suffered "personal injury by accident arising out of and in the course of employment." La.R.S. 23:1031; *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). The word "accident" as used in La.R.S. 23:1031 is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).

3

This court explained in *Lexington House v. Gleason*, 98-1818, pp. 2-3 (La.App. 3 Cir. 3/31/99), 733 So.2d 123, 124, *writ denied*, 99-1290 (La. 6/25/99), 746 So.2d 603 (alteration in original):

> Under La.R.S. 23:1031(A), an employer is required to pay workers' compensation to an employee not otherwise eliminated from receiving benefits if the employee sustains an injury by accident "arising out of and in the course of his employment . . . ." The "arising out of" and the "in the course of" elements are not synonymous but cannot be considered in isolation from each other. *Jackson v. American Ins. Co.*, 404 So.2d 218 (La.1981). A strong showing with reference to one of these elements may compensate for a relatively weak showing with reference to the other. *Id.* In *Jackson*, the court found that the "arising out of" element in the case before it was satisfied by two factors: the extent to which employee attendance at the event was mandatory and the degree to which the employer's purpose was served by the activity which gave rise to the injury. The court also explained that the "in the course of" element generally relates to the time and place of the accident as it relates to that of the regular employment.

The workers' compensation judge relied on *Girard v. Patterson State Bank*, 06-49 (La.App. 1 Cir. 11/3/06), 950 So.2d 703, *writ denied*, 06-2792 (La. 1/26/07), 948 So.2d 173, both in denying Ms. Lemoine's motion for summary judgment and in granting Risk Management's motion for involuntary dismissal after trial on the merits. In *Girard*, the plaintiff went into a mobile blood donation unit owned by United Blood Services (UBS), which was parked on the premises of her employer, Patterson State Bank (PSB). A phlebotomist drew blood, immediately causing a burning sensation in Ms. Girard's arm, and she could not move her fingers. She was eventually diagnosed with Complex Regional Pain Syndrome and has remained in constant pain ever since. Ms. Girard resigned when she could no longer perform her duties as a loan servicing clerk. She later filed a disputed claim form, averring that she was entitled to receive compensation benefits from PSB as a result of the injury she sustained while donating blood. PSB answered the lawsuit generally denying her

claims and filed a motion for summary judgment seeking dismissal from the lawsuit, averring that Ms. Girard had not sustained an accident that arose out of and in the course of her employment. The OWC agreed, granting summary judgment and dismissing Ms. Girard's claims against PSB. Ms. Girard appealed.

The appellate court affirmed, finding that Ms. Girard had failed to establish either the "in-the-course-of" or the "arising-out-of" elements necessary to entitle her to receive compensation benefits from her employer. The court noted that although the accident happened during Ms. Girard's regular working hours and on her employer's premises, donating blood was clearly not among her job duties as a loan servicing clerk. In addition, the court found that while PSB may have encouraged its employees to donate blood, they were neither rewarded nor sanctioned as a result of their decision of whether to participate in the blood drive.

***Assignment of Error Number One***

Ms. Lemoine contends that the workers' compensation judge erred in finding that she was not within the course and scope of her employment with the Town at the time of her injury. The Town disagrees, arguing that because Ms. Lemoine's participation in the roadblock was completely voluntary, the workers' compensation judge was correct in concluding that she was not in the course and scope of her employment when she was injured.

In dismissing Ms. Lemoine's claims against the Town, the workers' compensation judge stated:

> The testimony of [Mayor] Fontenot was that Ms. Lemoine left the place of employment, went home and changed her clothes and was simply out there with everyone else volunteering, never required to do this. I don't find that this incident occurred in the course and scope of Ms. Lemoine's employment, while performing the functions and duties of her job. It was a volunteer action much like in the case of *Girard. . . .*

5

While deposition testimony of all of the Town employees present at the roadblock indicated that Ms. Lemoine was on the clock at the time of her injury, *Girard* stands for the proposition that this factor alone is not determinative of whether an employee is in the course and scope of their employment so as to make that injury compensable under workers' compensation.

Mayor Fontenot testified that fundraising for the Cares Program was performed by volunteers and that roadblocks, such as the one at which Ms. Lemoine was injured, took place primarily on the weekends. He stated that Ms. Lemoine had volunteered in conjunction with the Cares Program before she was an employee of the Town. Mayor Fontenot was adamant that Ms. Lemoine's participation at the fundraising event for the Cares Program was strictly voluntary; he testified that she had the option of staying in the office to work or coming out to assist in the roadblock.

After having reviewed the record in its entirety, including the trial transcript and the exhibits submitted in conjunction with the trial on the merits, we conclude that the workers' compensation judge was not manifestly erroneous or clearly wrong in concluding that Ms. Lemoine was not in the course and scope of her employment when she was injured. Ms. Lemoine's first assignment of error is without merit.

### Assignment of Error Number Two

Because of our finding with regard to Ms. Lemoine's first assignment of error, we need not determine whether, under Louisiana law, Mayor Fontenot was vested with authority to establish the Cares Program on behalf of the Town.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Office of Workers' Compensation dismissing Janet Lemoine's claims against the Town of Simmesport. Costs of this appeal are assessed against Ms. Lemoine.

**AFFIRMED**.

JANET C. LEMOINE

VERSUS

TOWN OF SIMMESPORT

**COOKS, J., dissents.**

I respectfully dissent from the majority's decision to affirm the finding that Ms. Lemoine was not injured in the course and scope of her employment. The majority errs in its reliance on *Girard*, as it is factually distinguishable from the present case. There was absolutely no testimony in *Girard* that the injured claimant was required by her superiors at the Bank to donate blood. In fact, the *Girard* opinion specifically noted the Bank did not require employees to give blood. Thus, her decision to give blood was a choice she made that had no correlation whatsoever to her duties at the Bank.

The situation in the present case is completely different. Ms. Lemoine was employed by the Town of Simmesport, and her job consisted of collecting money for the Simmesport CARES program, which was established by the Mayor of Simmesport to help the areas elderly citizens. Ms. Lemoine would collect and deposit money to the "Simmeport Cares" account established with Simmesport State Bank.

Any checks issued on this account required the signatures of the Mayor and Ms. Lemoine before negotiation. Ms. Lemoine signed the checks as the manager, director and administrator of the CARES program. The roadblock fundraiser was specifically approved by the Simmesport Town Council.

The fundraiser began at 4:00 p.m. According to the Mayor, he told Ms. Lemoine she was not required to work the fundraiser, so she had the option of remaining in her office until 5:00 p.m. handling other matters. The accident in question occurred at 4:15 p.m., during Ms. Lemoine's regular work hours. Although the Town argued her participation in the roadblock was completely voluntary, the record establishes otherwise. As the majority noted, the testimony of Ms. Lemoine's co-workers indicated she was on the clock at the time of her injury. The record further established Ms. Lemoine was working regular hours performing her duties as Administrator of the Simmesport CARES Program by participating in its fundraising event. That she changed from office attire to clothes more suited to working outside is irrelevant. The fact that she elected to assist the CARE Program by helping at the roadblock rather than by staying in the office does not place her outside of the course and scope of her employment. Her participation in the event was part of her job duties and clearly served her employer's purposes in raising funds for a program directly managed and controlled by it. Thus, the workers' compensation judge was clearly wrong in holding that the injury to Ms. Lemoine did not occur while she was

in the course and scope of her employment.